## UNITED STATES *v.* DRISCOLL.

A. contracted to cut, furnish, and deliver in Washington City, at specified rates, granite to the United States, at such times as it might require, and to furnish such number of men as it might deem necessary to the proper prosecution of the work. The full cost of their labor, increased by fifteen per cent, was also to be paid to him by the United States. For every day that he was in default he was to forfeit and pay $100. *Held,* that there was no privity between the United States and the men employed by him in the execution of his contract.

APPEAL from the Court of Claims.

The facts are stated in the opinion of the court.

The court below rendered judgment *pro forma* for the claimant.

*The Solicitor-General* for the United States.

*Mr. Joseph Casey* and *Mr. Thomas J. Durant,* contra.

MR. JUSTICE SWAYNE delivered the opinion of the court.

This is an appeal from the Court of Claims. The petition of the appellee alleges that he worked the number of days specified, for the United States, ten hours a day, when he was required by law to work only eight hours a day; that he was paid at the rate of ten hours a day; and he claims further compensation for such number of days as the additional two hours aggregated will make, computing a day's work at eight hours instead of ten hours.

This is the basis and extent of the claim. The United States, among other defences, allege that the appellee was never employed by them, nor on their behalf.

The case is fully set forth in the findings of the Court of Claims. A brief statement of the facts will be sufficient for the purposes of this opinion.

The United States contracted with Ralph Ordway to furnish, from certain quarries near Richmond, Va., granite, to be delivered in Washington City. He was to be paid at specified prices.

They contracted with him, further, " to furnish all the labor, tools, and materials necessary to cut, dress, and box, at the quarry or quarries, all the granite, in such manner " as should be directed. The United States were to pay him " the full cost of said labor, tools, and materials, and also the insurance on the granite, increased by fifteen per cent on such cost."

The contract contained this further clause:—

" And the party of the second part (Ordway) further agrees to furnish such number of men as may be deemed necessary for the proper prosecution of the work by the party of the first part (the United States) ; and the party of the second part further agrees to cut as well as furnish and deliver all the granite herein contracted for, at such times as may be required by the party of the first part, and in default thereof to forfeit and pay to the United States the sum of one hundred (100) dollars per diem for each and every day thereafter, until the final delivery of the same, which sum shall be deducted from any moneys which may be due him; and if that amount be not due him, then his bondsmen are to be held liable for any deficiency, to be recovered of them by suit in the name of the United States."

The larger the amount of the cost, the larger would be the amount to be paid Ordway. His interests and those of the United States were, in this particular, therefore, in direct antagonism. Hence the United States employed and paid a superintendent and clerk, who were to be present all the time. The former was to see that every thing was done according to the contract, and that no frauds were committed on the government. It was also his duty, at the end of every month, to certify Ordway's accounts for his expenditures during that time. The clerk was his assistant, and subject to his directions. The employés were engaged and paid as follows: When a man was set to work, Ordway's foreman gave his name to the clerk of the superintendent, who put it on the time-book. The foreman put the price opposite the name. The clerk kept a ledger account, made out a pay-roll at the end of each month, and had the men sign it. It was approved by the superintendent, and delivered to Ordway, and he received the amount from the United States, with the fifteen per cent added, according to the contract. He then paid the men, according to the pay-roll and their receipts thereon. The appellee was employed and paid in this way.

It is clear that there was no privity between the appellee and the United States. Ordway employed him and was to pay him, and did pay him. The United States had no interest in the rate or amount paid, save that the sum so paid, with fifteen per cent in addition, was the measure of the amount to be paid to Ordway. The fact that Ordway procured the appellee's receipts, presented his own vouchers to the government, and received his pay before paying his hands, is immaterial as regards the rights of the parties. It was a convenience to the contractor, and safe for government. The hands trusted the former; and, if he had failed to pay them, the loss would have been theirs. The government having the contractor's receipts, it could not have fallen upon the United States. The acknowledgment of payment by the employés, before getting their money, was wholly their own concern. Ordway was bound by his contract to have the work done as specified; and upon every default he was liable for a penalty of $100 a day until he should fulfil his undertaking. This stipulation is incongruous with the

idea of his being an agent and not a contractor. The latter was his relation to the government. Between himself and the appellee it was simply that of employer and employé.

The mode, manner, and rate of Ordway's compensation was a matter between him and the United States, and was one with which the appellee had nothing to do. Hence, in this case, it can in nowise affect the rights of the parties. The appellee stands upon exactly the same ground as the employés of any other contractor with the government. It follows that he can have no rightful claim against the appellant. This is conclusive against him. It is, therefore, unnecessary to consider the other points of defence insisted upon by the United States.

*Judgment reversed, and the case remanded with directions to dismiss the petition.*