BENJAMIN G. HARRIS and JOHN H. NEALE, Surviving Partners of FRANCIS NEALE and others, Trading as NEALE, HARRIS & CO. *vs.* WILLIAM E. HOOPER, DUVALL & IGLEHART GEORGE F. WILSON, and others.

*Effect of not making a Subsequent Judgment Incumbrancer, a Party to Proceedings to sell Mortgaged Premises under a Prior Mortgage Incumbrance—Remedies allowed such Junior Incumbrancer—Rights of the Assignee of a Decree to sell Mortgaged Premises—Protection of the Title of a Purchaser of Mortgaged Premises Sold under a Decree—Right of Junior Incumbrancer to have an Account Stated—For what Indebtedness a Mortgage to Operate as a Security—Application of Payments by a Mortgagor.*

In proceedings instituted to sell property to satisfy a debt secured by a mortgage, which was the first incumbrance on the property, it is proper to make the holder of a subsequent incumbrance, being a judgment against the mortgagor, a party to the proceedings. Where subsequent incumbrancers have not been made parties to the suit, they are not bound by the decree.

Where a subsequent judgment incumbrancer has not been made a party to a proceeding, under which mortgaged premises are sold, and the sale finally ratified, and the case referred to the auditor who has made his report, which has been ratified *nisi*, but not finally ratified, he may intervene in the original cause by petition and claim satisfaction out of the purchase money, (if any remain,) after as much thereof has been applied to pay the mortgage debt, as may be required; or he may maintain a separate bill for this purpose. By intervening in the original cause the sale would remain unimpeached; whereas by filing a separate bill, the subsequent judgment incumbrancer might obtain fuller and more complete relief, not only by causing the account of the mortgage debt to be correctly stated, but also by annulling the decree and setting the sale aside, in case he should establish that the mortgage debt had been fully paid, and that there was fraud on the part of the purchaser (who in this case was assignee of the decree,) in obtaining the decree and in making the sale.

Harris, *et al.* *vs.* Hooper, *et al.*

The assignee of a decree to sell mortgaged premises acquires no other or greater rights than those held by his assignor; his claim under the mortgage and decree is subject to the same abatement as it would be in the hands of his assignor, and the account of the mortgage debt must be stated in the same manner as if the assignment had not been made

Where no fraud was charged, nor was there any evidence to show fraud against the purchaser, who was also the assignee of the decree to sell the mortgaged premises, in obtaining the decree or in the sale, nor any charge impeaching the *bona fides* of the sale, or any proof that it was not fairly made and for a fair and adequate price, he is entitled to be protected in the purchase as against a subsequent judgment incumbrancer not made a party to the proceeding to sell the mortgaged property. Such subsequent judgment incumbrancer is entitled, under an original bill, to have an account stated, (the purchase money remaining under the jurisdiction and control of the Court,) showing the real amount of the mortgage debt remaining unpaid, and to have the surplus, (if any,) applied in satisfaction of his judgment.

A mortgage cannot be lawfully held for or operate as a security for any other debt than that to secure which it was given. It cannot be held to operate as a security for a balance due on a running account between assignees of a mortgage and a mortgagor, in which the latter was charged with the amount of two acceptances, and with merchandise and money at various times; several payments made by the mortgagor having been credited upon the account, and for the amount of which balance the decree appears to have been entered.

Where a mortgagor directed certain payments to assignees of a mortgage to be applied in payment of the mortgage debt, they must be so applied by the auditor in stating the account to show the amount or balance due on the mortgage debt at the time of the decree.

APPEAL from the Circuit Court for St. Mary's County, in Equity.

The facts of the case are stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., BOWIE, MILLER and ALVEY, J.

*William M. Merrick*, for the appellants.

It was not competent for the parties to said mortgage at any period subsequent to the judgment, by any new parol arrangement, to revise said mortgage, neither could they by bill, answers and decree, affect the rights of the appellants who were not parties to those proceedings. *Story's Equity Pleading*, sec. 193; *Griffith vs. Hammond*, 45 *Md.*, 88; *Code, Article* 64, sec. 2.

George F. Wilson, standing as assignee of a non-negotiable claim, is charged with all the acts, and all the knowledge of his assignors affecting its integrity. These complainants base the right to assail the decree and sale reported under it, by an independent proceeding, and were under no obligation to intervene, nor could they rightfully have intervened as parties to that cause. *Lee vs. Early*, 44 *Md.*, 92; *Griffith vs. Hammond*, 45 *Md.*, 88.

There having been no opportunity of payments between Hooper and Duvall, other than certain specific appropriations to the mortgage debt, the law will make the appropriation to the mortgage debt, upon the double- ground that it is the oldest debt in point of time, and it was more advantageous to the debtor to make the appropriation to the mortgage than to the later items of open account. *Lee vs Early*, 44 *Md.*, 80; *Neidig vs. Whiteford*, 29 *Md.*, 178; *Given vs. Whittaker*, 1 *H. & J.*, 754; *Dorsey vs. Gassaway*, 2 *H. & J.*, 402; *Laeber vs. Langhor*, 45 *Md.*, 480.

The account kept by Duvall and Iglehart being a running account of all the debits and credits, the law will appropriate payments, even to the defeat of a lien, to earliest items. *Trustees of the Ger. Luth. Church vs. Heise & Co.*, 44 *Md.*, 471.

Where the account is entire, as the account of Duvall and Iglehart was at the time of the payments made and entered, the creditor will not be allowed to separate or split such demand into parts, and appropriate a general payment to that part most advantageous to him to be

paid. The payments being once entered on general account by operation of law, the appropriation is instantly made to the discharge or reduction of the first items on the debit side of the account. *Trustees of the Ger. Luth. Church vs. Heise & Co.,* 44 *Md.,* 471, 472.

Under the prayer for general relief upon the case, made by the bill and the proofs, the complainants might have an alternative personal decree against George F. Wilson in his double character as purchaser and assignee of the supposed mortgage, for the amount of the complainants' judgment represented in the purchase money, and in default thereof, a decree to sell for the satisfaction of the judgment. Even if the whole of the mortgage debt had not been cancelled, it was quite apparent from the proofs that a very large proportion had been cancelled, and the Court below should have referred the case to an auditor to ascertain the true amount due, and therefore should have charged the respondent, Wilson, with the surplus in favor of the complainants. Until full payment of the purchase money, the respondent, Wilson, could not be protected from the claims of the complainants as an innocent purchaser without notice, as was erroneously decided by the Court below. *Boone vs. Childs,* 10 *Peters,* 211.

*Henry Stockbridge,* for the appellee, George F. Wilson.

The judgment creditors were not necessary parties to the foreclosure proceeding, and consequently their omission was not an error and injury of which they could make complaint and seek redress through the aid of a Court of equity. When the mortgage was made there was no other incumbrance upon the property, and the security given by the mortgagor had a priority to any incumbrance that the mortgagor could thereafter place upon it. To permit him to embarrass the action of his creditors to whom he had then and thus given security would be to permit him to annul his act of giving secu-

rity for his debt after he had consumed the considera-
tion, and thus defraud the creditor whom he had assumed
to secure when perfectly competent to give the security.
The mortgage creditor held the first claim against the
mortgaged property, and no act of the mortgagor could
deprive him of his priority or embarrass him in convert-
ing his security into payment, in accordance with the
terms of his mortgage.   This is so irrespective of the pecu-
liar provisions of our statute and the peculiar rights con-
ferred by the terms of the mortgage itself, but in the
mortgage itself the mortgagor declares "this mortgage
subject to any and all laws which are now or may here-
after be in force in said St. Mary's county, designed to
facilitate the foreclosure of mortgages, and assents to the
passage of any decree by any Court of adequate jurisdic-
tion for the foreclosure of this mortgage, in accordance
with the provisions of any and all such laws." This
assent then, and so given, obviated any necessity of a
formal issuing of process and summoning of the mort-
gagor, or any person thereafter acquiring an interest in
the mortgaged property under him, as parties to a pro-
ceeding for foreclosure.   The mortgage itself, with such
assent embodied in it, is the commencement of the equity
proceeding, and no transfer of the property afterwards
can embarrass the progress of those proceedings or impose
upon the complainant the necessity of noticing them, at
least unless he is formally notified of the transaction;
and if he is not required to notice a conveyance, much
less could he be required by a subsequent mortgage or a
confessed judgment to change the right of procedure
which had been conferred upon him.   *Calvert on Parties,*
128–138, 135; *Story's Eq. Pl.,* sec. 198; *Kauffman vs.
Walker,* 9 *Md.,* 241; *Knell vs. Green St. B. Assn.,* 34 *Md.,*
67; *Sumwalt vs. Tucker, &c.,* 34 *Md.,* 89.

Even if it were so that the payments made on account
were improperly credited by the appellees, Duvall &

Iglehart, and should have been applied to the mortgage debt as alleged by the complainants, still the complainants have mistaken their remedy and cannot maintain the present suit. The original suit was a foreclosure suit under statute. By the settled practice and all the decisions of our Courts, any person interested in the property, or in the equity of redemption, has a right to intervene and to except to the sale, or to claim to have their interests respected in the distribution of the proceeds of sale, according to their respective priorities. But these appellants took no exception to the sale, but allowed the same to be finally ratified and the rights of the purchaser to become perfected. Neither then did they file any claim to be allowed out of the proceeds of sale but while those proceeds were lying wholly undistributed in the hands of the trustee, and the audit was unratified, instead of making any claim for allowance out of the excess beyond the payment of the mortgage debt, they institute the present proceeding to vacate a regular and proper decree, to set aside a sale made by the Court's officer, and ratified and confirmed by the Court, to divest a title acquired under due process of law, without any allegation of fraud, surprise, or mistake, and to obtain a sale of the property for the payment of a subsequent incumbrancer, to the exclusion of a prior incumbrancer claiming under an undisputed *bona fide* mortgage.

But there is no proof in the case to sustain the allegations of the bill that the mortgage debt, for the payment of which the property was sold in the foreclosure case, was not due at the time of the institution of that case and of the sale of the property. The proceedings in that case, although read as a part of this case at the hearing below, are not in the record and cannot be passed upon by this Court. The only direct and positive evidence upon that point is the evidence of the appellants' witness, Henry Duvall. He is there asked, " State whether the

sum alleged by you in your bill to foreclose the mortgage, that had been assigned to you by A. Needham & Sons, was actually due at the time of filing of the bill?" His answer is, "It was; the amount was due on the mortgage." This testimony is corroborated by the appellants' other witness, William E. Hooper. His testimony makes it evident that the mortgage debtor was indebted to Duvall & Iglehart while they owned the mortgage, on open account as well as on mortgage; that being so indebted he sent them money, never enough to pay off the open account, and without instructions as to the application of the payment. It was their right then to apply it as they saw fit, and having so applied it without complaint on the part of the debtor, it cannot now be called in question by the appellants. This appellee, Wilson, is a purchaser under a valid and subsisting decree, without any notice of anything affecting its validity, or of any equities of the complainants, and is to be protected accordingly.

BARTOL, C. J., delivered the opinion of the Court.

On the 3rd day of September 1858, William E. Hooper of St. Mary's County, being indebted to Asa Needham & Sons, merchants, in the City of Baltimore, in the sum of $3500, to secure the same, executed a mortgage of his farm in said county, which was duly acknowledged and recorded.

On the 16th day of October 1866, Asa Needham & Sons, the mortgagees, assigned the mortgage to Duvall & Iglehart, by indenture duly acknowledged and recorded. The deed of assignment recites that Hooper the mortgagor had paid all the mortgage debt and interest, except the sum of $2824.11, which remained as the balance due thereon.

In the deed of assignment it is further recited that Duvall & Iglehart had accepted two drafts of Hooper in favor of A. Needham & Sons amounting to $2824.11, which they had paid at maturity; and that it had been

understood and agreed by Hooper and all the other parties to the transaction, that the mortgage should be assigned to Duvall and Iglehart, to secure to them the payment of the sum of $2824.11, being the amount of the drafts, and also the amount of balance due from Hooper on the mortgage; and to secure the payment of the same the assignment was made.

On the 15th day of June 1872, a bill was filed by Duvall & Iglehart on the equity side of the Circuit Court for St. Mary's County against Hooper, alleging that Hooper was largely indebted to them for balance due on the mortgage, &c., and on the 17th day of the same month a decree was entered " by consent" for the sale of the mortgage premises to pay the sum of $3857.56 with interest from June 5th 1872; and Henry Duvall was appointed trustee to make the sale. On the same day on which the decree was obtained, it was entered for the use of George F. Wilson. The mortgaged property was sold by Duvall, the trustee, at public sale, on the 23rd day of November 1875, and George F. Wilson became the purchaser for the price of $3500. The sale was duly reported to the Court, and was finally ratified; and the case was referred to the auditor, who made his report, which was ratified *nisi*, but has not been finally ratified. Wilson to whom the decree had been assigned, being the purchaser has not actually paid the purchase money, inasmuch as the same was not sufficient to satisfy the decree, to which he was entitled as assignee.

Whereupon the appellants, on the 23rd day of August 1876, filed their bill of complaint, against *Wilson, Hooper*, Duvall & Iglehart, and Asa Needham & Sons stating the facts hereinbefore recited, and alleging that they, the appellants, obtained a judgment in the Circuit Court of St. Mary's County, against Hooper, on the 25th day of January 1869, for $2905.56, and that there remained a balance due and unpaid thereon, on the 1st day of Janu-

ary 1874, of $2236.86, after deducting the several payments made by Hooper in the meantime.

The bill alleges, that "Hooper was not at the time of the decree, indebted to Duvall & Iglehart on the mortgage, but that the same had been paid, and that the decree was in fraud of the rights of the appellants holding a judgment against Hooper subsequent to the date of the mortgage, and next in point of priority thereto."

The bill further alleges, that the proceedings by Duvall & Iglehart to enforce the mortgage, and the decree obtained thereon, without making the appellants parties thereto, were fraudulent and void, so far as their rights are concerned, and they have been advised that they are entitled to have said proceedings and decree annulled and vacated, and a sale made of the property for the purpose of paying the amount due on their judgment; the bill prays specifically for this relief, and also for general relief.

A. Needham & Sons in their answer state, that they assigned the mortgage in good faith, and have no interest in the present controversy. This is shown by the proof; they were therefore entitled to be dismissed with their costs.

The answer of Duvall & Iglehart denies the fraud alleged in the bill, and avers that Hooper was at the time the decree was obtained, justly indebted to them for the full amount stated in their bill of complaint, upon which the decree was obtained. They admit the assignment of the decree to Wilson as alleged, and aver that the sale by Duvall, the trustee, was fairly made, after due notice, and has been finally ratified.

Wilson, after disclaiming in his answer, all knowledge of the several matters alleged in the bill with reference to other persons than himself, avers that he is advised, "if the facts stated in the bill are true, as therein set forth, with reference to the execution of the mortgage, and the

rendition of the judgment therein referred to, yet under the laws of Maryland, the mortgage had a priority to the judgment as the first incumbrance upon the property referred to, and it was not necessary, in any proceedings instituted for the purpose of collecting the mortgage debt, to make the holders of the subsequent incumbrance parties."

The answer further states, upon information and belief, that it is not true, as alleged in the bill, "that Hooper was not at the time of the decree indebted to Duvall & Iglehart on the mortgage, that the same had been paid, and that the decree was obtained in fraud of the rights of the complainants; and avers that there was large indebtedness justly due and owing on the mortgage."

The answer further avers, that the question whether any thing was due upon the mortgage, is one properly cognizable in the original proceeding for foreclosure, or in the distribution of the purchase money, and is not a proper subject for a distinct proceeding, and that the present suit is not necessary to the ends of justice, or for the the establishment or protection of any right, and is vexatious.

The answer further avers, that the assignment was made to the respondent in good faith, and for a valuable consideration, that the property was fairly sold, if any objection existed to the sale it ought to have been made, by any person interested therein, in due time by intervening in the original proceedings, but there was no such intervention or objection, and the sale having been finally ratified, the title of the respondent became vested and fixed, and cannot be questioned collaterally, or successfully assailed in this proceeding; but the complainants in this case, if they have any right or claim to assert, should proceed in the original foreclosure proceedings against the proceeds of sale, "the trust fund undistributed in the hands of the trustee."

We have thus stated at more length than usual, the pleadings in the case, in order to show the several questions presented for our decision.

The proof in the case will be referred to hereafter. *First.*—In the suit to enforce the payment of the mortgage debt, were the appellants necessary parties ? They held, as before stated, a judgment against the mortgagor, recovered after the date of the mortgage.

A reference to the authorities will show a good deal of conflict in the decisions in England upon the question whether in a proceeding to foreclose a mortgage, persons holding junior incumbrances are necessary parties. The cases have been collected by *Mr. Calvert* in his excellent work on "*Parties to Suits in Equity*," 128 *to* 183 (17 *Law Lib.*) The subject is also considered and the authorities cited in 4 *Kent*, 185, 186*m*, (11*th Ed.*,) in *Daniel's Ch. Pr. & Pl., vol.* 1, 277, and in *Story's Eq. Pl., sec.* 193.

We have examined the cases referred to by the text writers, and think the conclusion deduced from them by Mr. Calvert is correct:

"That while subsequent incumbrancers are not always necessary parties, it is generally proper to make them parties, with a view to a final settlement of the rights of all the parties in interest." All the authorities concur in support of the principle, that where they have not been made parties to the suit, they are not bound by the decree. 4 *Kent*, 186.

As said by the learned Chancellor in *Haines vs. Beach*, 3 *Johns. Ch. R.*, 464, "the necessity of making the subsequent incumbrancers parties, or holding their rights unimpaired, appears to be much stronger, and is indispensable to justice, in cases of decrees for sales, according to our practice ; for otherwise the mortgagor would take the surplus money or the cash value of the equity of redemption, and defeat entirely the lien of the subsequent creditor."

Besides, the subsequent incumbrancer is interested in the account, and entitled to examine the same, otherwise his rights might be defeated by collusion between the mortgagee and mortgagor. *Cockes vs. Sherman,* 2 *Freeman,* 14; *Needler vs. Deeble,* 1 *Ch. Ca.,* 289.

It follows that the appellants not having been parties to the suit, are not concluded by the decree.

*Second.*—The next inquiry is, were they bound to intervene in the cause, or may they maintain a separate bill? They might have intervened in the original cause, by petition, and claimed satisfaction out of the purchase money, if any remained, after applying as much thereof as might be required to pay the balance due upon the mortgage.

But this was not their only remedy, there is no reason why a separate bill for this purpose might not be maintained, such a proceeding was had in *Needler vs. Deeble,* before referred to, and many other precedents might be cited. By intervening in the original cause, the sale would remain unimpeached, whereas by filing their separate bill, the appellants might obtain fuller and more complete relief, not only by causing the account of the mortgage debt to be correctly stated, but also by annulling the decree and setting the sale aside, in case they should establish that the mortgage debt had been fully paid, and that there was fraud on the part of the purchaser in obtaining the decree, and in making the sale.

*Third.*—We proceed to consider the relief to which the appellants are entitled. It is clear that Wilson acquired as assignee of the decree, no other or greater rights than those held by his assignors *Duvall & Iglehart;* his claim under the mortgage and decree, is subject to the same abatement, as it would be in the hands of his assignors, and the account of the mortgage debt must be stated in the same manner as if the assignment had not been made.

But Wilson also occupies the position of purchaser, with respect to him no' fraud is charged, either in the

obtaining of the decree, or in the sale; nor is there any evidence which would justify such a charge as against him; nor is there any charge made in the bill impeaching the *bona fides* of the sale, or any proof that it was not fairly made, and for a fair and adequate price.

. Under these circumstances it seems to us, he is entitled to be protected in the purchase. It has been said that " Courts maintain with jealous vigilance the titles of purchasers under judicial sales, and go very far in favoring and supporting them." 1 *Gill*, 345; 3 *Md.*, 463; 14 *Md.*, 121; 27 *Md.*, 452; 30 *Md.*, 90. In this last case it was said that "purchasers under subsisting judgments and decrees, obtain a good title, although such judgments and decrees may afterwards be reversed, and that fraud on the part of others, will not affect or taint the title of an innocent purchaser, at a judicial sale."

In this case no sufficient cause is shown for annulling or setting aside the sale made by Duvall the trustee. But the purchaser not having paid the purchase money, and the fund remaining under the jurisdiction and control of the Court, the appellants are entitled to relief in respect thereto, to have an account stated showing the real amount of the mortgage debt remaining unpaid, and the surplus, if any, applied in satisfaction of their judgment; and for this purpose the bill ought to have been retained.

The proof shows that the mortgage was held by Duvall & Iglehart, to secure to them the payment of their two acceptances, amounting to $2824.11. It could not be lawfully held by them for, or operate as a security for any other debt due to them from the mortgagor. *Code, Art.* 64, sec. 2; *Laeber vs. Langhor*, 45 *Md.*, 482.

It appears from the evidence that at the time the mortgage was assigned, and afterwards, there was a running account between Duvall & Iglehart and Hooper, in which the latter was charged with the amount of the two acceptances, and with merchandise and money at various times.

Several payments were made by Hooper which were credited upon the account; and for the balance due thereon, Duvall & Iglehart claimed to hold the mortgage, and for the amount of this balance the decree appears to have been entered. This was clearly erroneous.

Here arises the question of the application of payments. The rule upon this subject is well settled. *Neidig vs. Whiteford,* 29 *Md.,* 179; *Trustees of the German Lutheran Church vs. Heise,* 44 *Md.,* 471.

In the case last cited the rule is thus stated: "Where divers debts are due from a person, and he pays money to his creditor, the debtor may, if he thinks proper, appropriate the payment to the discharge of any one or other of those debts; and if he does not appropriate it, the creditor may make an appropriation; but if there is no special appropriation by either party, and there is a current account between them, the law makes an appropriation according to the order of the items of the account, the first item on the debit side of the account being the item discharged or reduced by the first item on the credit side. And where the demand is entire, the creditor will not be allowed to separate, or split such demand into parts, and appropriate a general payment to that part which is most advantageous to him to be paid." Applying this rule to the present case the auditor will have little difficulty in ascertaining the sums which ought to be credited to the mortgage debt, and the amount or balance due thereon at the time of the decree. It appears by the letters of Duvall & Iglehart addressed to Hooper, dated March 1st and 27th 1866, February 11th and August 30th 1867, and April 24th 1868, that as to some of the payments, Hooper directed that they should be applied in payment of the mortgage debt. Such appropriation he had a legal right to make, and they ought to be so applied; with respect to other payments or credits, not referred to in those letters, the rule of appropriation before stated, ought to be

applied.    In stating the account, the auditor ought to be allowed to take further testimony, if the parties so desire, upon the usual notice.

The decree of the Circuit Court dismissing the bill as against George F. and Asa Needham will be affirmed ; and as to the other defendants the decree will be reversed with costs, and the cause remanded for further proceedings, in accordance with this opinion.

· As there is no sufficient ground for annulling, or setting aside the sale ; and nothing remains to be determined except the amount due upon the mortgage, and the amount of surplus of money to be applied in satisfaction in whole or in part of the judgment, it will be proper for the Circuit Court to order the cases to be consolidated, to set aside the account of the auditor heretofore made and to refer the case again to him, so that a new account may be stated.

*Affirmed in part, and*
*reversed in part, and*
*cause remanded.*