CHARLES O. HEINSE ET AL. *v.* CHARLES T. HOWARD, TRUSTEE IN BANKRUPTCY.

*Mortgage — Failure of Consideration — Rights of Assignee — Decree for Cancellation.*

Where, pending a suit to compel the assignee of a mortgage to release it, such assignee was adjudicated a bankrupt, and its trustee in bankruptcy was made a defendant, the Court of Appeals will assume, in the absence of any objection to the trial court's jurisdiction, that it had jurisdiction to determine whether the trustee could enforce the mortgage and, if not, whether he should be compelled to release it.                    p. 286

Md.]                          Syllabus.

An assignee of a mortgage, taking with full notice of all the facts, takes subject to all such equities and defenses as the mortgagors could have asserted against the mortgagee himself.

pp. 386, 387

A contract by a construction company to build a house was, although the payments were to be made in instalments as the work progressed, entire and indivisible, and the company, having abandoned the work without any legal excuse, after partial completion, could not recover for the work done by it, either on the contract or on a *quantum meruit.*          pp. 387, 388

A mortgage given to a contractor, to secure instalment payments to be made by the mortgagors on account of the construction of a house on their property, was not enforcible by a lumber dealer to whom it had been assigned by the contractor to secure the price of lumber furnished the latter, the contractor having abandoned the work without any legal excuse, after partial performance, and the lumber dealer having taken the assignment with notice of the facts.          pp. 388, 389

The fact that the lumber dealer had furnished to the contractor the lumber which went into the house was immaterial, the mortgage not having been given to secure the contractor's debt to the lumber company.          p. 389

Where the consideration for a mortgage had failed, and the mortgage was consequently not enforcible, it was proper to direct that it be cancelled.          p. 389

*Decided June 10th, 1927.*

Appeal from the Circuit Court of Baltimore City (STUMP, J.).

Bill by Charles O. Heinse and Emma M. Heinse, his wife, against the Leight Construction Company and the Chesapeake Lumber Company, to which Charles T. Howard, the trustee in bankruptcy of said lumber company, was made an additional party defendant. From a decree requiring the release of a mortgage by said trustee only on the payment to him by the plaintiffs of a named sum, they appeal. Reversed.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Simon E. Sobeloff,* for the appellant.

*Henry Zoller, Jr.,* for the appellee.

OFFUTT, J., delivered the opinion of the Court.

Charles O. Heinse and Emma M. Heinse, his wife, entered into a written contract dated March 24th, 1926, with the Leight Construction Company, a corporation, under which it was to construct for them a house on two lots owned by them on Orchard Avenue in Baltimore City for $6,095, which was to be paid in accordance with the following schedule:

| | |
|---|---|
| "First payment to be made when the first floor joists are laid and the house has been sheathed, the sum of seven hundred dollars. . . . . . . . . . . . . . . . . . . . . . . . . . . . | $700.00 |
| "Second payment to be made when the roof has been erected, house lathed and the plumbing roughed in, four hundred dollars. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $400.00 |
| "Third payment to be made when the stucco work has been completed and the lathing and plastering has been completed, the sum of five hundred dollars. . . . . . . . . . . . | $500.00 |
| "Fourth payment to be made when the house has been completely trimmed out, the sum of four hundred dollars. . . . . . . . | $400.00 |
| "Fifth payment to be made when the house has been completely erected and completed in full, the sum of. . . . . . . . . . . . . . | $4,095.00" |

To secure these payments Heinse and his wife, on March 23rd, 1926, executed to the Leight Construction Company, hereafter called the construction company, a mortgage on the two lots, which mortgage contained this recital:

"Whereas the parties hereto of the first part are justly and bona fidely indebted unto the said party of the second part in the sum of six thousand and ninety-five dollars ($6095), which is to be paid as follows: The said The Leight Construction Company, party hereto of the second part, is to build and erect upon the lot of ground and premises hereinafter described, a certain residence or dwelling in accordance with the plans and specifications attached to the building contract between the parties hereto of even date herewith and in accordance with the terms of said contract and under the terms of this mortgage, first, seven hundred dollars ($700) when the first floor joists are laid and the house has been sheathed; second, four hundred dollars ($400) when the roof has been erected and the house has been lathed and the plumbing roughed in; third, five hundred dollars ($500) when the stucco work has been completed and the lathing and plastering has been completed; fourth, four hundred dollars ($400) when the house has been completely trimmed out; fifth, four thousand and ninety five dollars ($4,095) when the house has been completely erected and completed in full."

After the execution of that mortgage the Leight Construction Company contracted with the Chesapeake Lumber Company, hereafter called the lumber company, for lumber to be used in the construction of the house, and to secure the payment of the purchase price of the lumber to be furnished by said lumber company, it, on April 9th, 1926, assigned the mortgage to it, which assignment was duly recorded on the following day.

The construction company started the construction of the house, but after it had completed so much of it as was specified in the first item of the schedule, which provided for the payment of $700, but before it had completed the work specified in the second item thereof, calling for the payment of $400, it abandoned the contract, and by its letter of July 3rd so notified Mr. and Mrs. Heinse. At the time the work

was abandoned, they had paid the construction company $700 on April 24th, 1926, the amount due on the first instalment payable under the contract, and had on May 1st, 1926, advanced $300 to it on account of the second instalment, which never became due.

When the contract was abandoned, Heinse went to the lumber company to ascertain what he would have to pay for enough lumber to complete the house, and then learned for the first time that the mortgage from him and his wife to the construction company had been by it assigned to the lumber company, and that it intended to use it to force them to pay $1,758.03 for lumber which it had delivered to the construction company, and which it, the lumber company asserted, had been used in the construction of appellants' house.

The appellants then filed in the Circuit Court of Baltimore City a bill of complaint against both the construction company and the lumber company, setting out in substance the facts stated above and praying the passage of a decree requiring the lumber company to release the mortgage. The lumber company appeared and answered, but the construction company failed to appear, and a decree *pro confesso* was entered against it. Pending the case, the Chesapeake Lumber Company was adjudicated a bankrupt, and, on petition, its trustee in bankruptcy was made a party defendant. Testimony was taken and finally the case was heard on bill, answer and testimony, and at the conclusion of the hearing the court decreed that the trustee in bankruptcy release the mortgage upon the payment to him of $750 with interest from the date of the decree. The appeal is from that decree.

It appears from the appellants' testimony, which is not disputed, that at the time the mortgage was assigned to the lumber company, it agreed with the construction company that its debt was to be paid out of the last instalment to become due under the schedule referred to above, and that until that instalment became due such earlier payments as became due under the contract with Mr. and Mrs. Heinse were to be

collected by the construction company, the assignor, and that the appellants were not to be informed of the assignment. It further appears that appellants actually knew nothing about the assignment, although they had constructive notice of it through its recordation, and that, after the construction company abandoned the contract, the appellants paid labor claims against the property which should have been paid by the construction company, aggregating $377, and that there was still pending a further claim against it of $350.10, and that it paid $4,700 to one Apsley to have the house completed.

There was some conflict in the testimony as to the quantity of lumber delivered by the lumber company to the construction company and actually used in the construction of appellants' house. Martin Wiseman, president of the lumber company, said that lumber valued at $1,758.03 was sent to be delivered to the construction company at the Orchard Street house, although he had no personal knowledge of that fact, and based his statement upon certain unauthenticated delivery tickets. He was corroborated by Simon Goldman, general manager and treasurer of the company, who said that he knew that lumber valued at $1,758.03 was delivered to the construction company at the Heinse house on Orchard Avenue. While there was no direct or positive testimony on behalf of the appellants as to just how much lumber had been used in constructing their house at the time the construction company ceased work on it, Heinse testified that, when he was informed of the amount of the lumber company's claim, he told Wiseman that there was between $700 and $800 worth of material in the house. He also said that on one occasion during the course of the work, when it was held up by non-delivery of lumber, having heard that lumber delivered at his house had been taken away and used on other buildings, he went to the lumber company for information, and Mr. Wiseman told him: " 'The lumber that is intended for your job, some of it is being used on some of his other

houses. I think,' he says, 'he is developing a place over on Glenoak Avenue.' He thought that was where some of this lumber was going. Q. Mr. Wiseman told you this? That was Mr. Wiseman's explanation? A. Yes, sir." Other witnesses testified without contradiction that lumber was hauled away from the Heinse house by employees of the construction company, and one witness in particular, Mrs. Mary V. Cavey, indicated that the amount thus removed was substantial. She said: "Q. Mrs. Cavey, did you see lumber hauled away from the house that was being built for Mr. Heinse? A. I did. Q. When was it? A. I don't know that I could give the exact dates, and it was so often we said if people kept it up they wouldn't have anything left to build the house with. Q. It was between March 24th, the day the contract was made, and July 3rd, the day Mr. Leight gave up the job? A. Yes, sir. Q. You say it happened so often that you said what would happen? A. They wouldn't have enough left to build a house with. Q. Can you give us an idea of how many times lumber was hauled away? A. I mean it was nothing unusual to see them taking lumber away from there."

The primary question arising upon these facts is whether the trustee in bankruptcy of the lumber company can enforce the payment of its claim for lumber sold to the construction company, to be used in the construction of the Heinse house, by foreclosing the mortgage given by the Heinses to the construction company, and whether, if he cannot, he ought not to be required to release it.

No question was raised by the parties as to the jurisdiction of the trial court to determine that question, notwithstanding the Bankruptcy Act, and we will deal with it upon the assumption that such jurisdiction exists. *Remington on Bankruptcy,* sec. 2042.

Any claim which the appellee may have against the appellants, for lumber delivered to the Leight Construction Company, necessarily rests upon the mortgage, for it had no contract of any character express or implied with the appellants, and as an assignee with full notice of all the facts,

it is subject to all such equities and defenses as the mort-
gagors could have asserted against the mortgagee named in it.
*Farmers and Merchants Bank v. Anderson,* 152 Md. 641.
That it had such notice appears not only from the undis-
puted testimony, but from the terms of the mortgage itself.

What then were its rights under the mortgage? In the
first place the mortgage purported to secure not a present
but a future indebtedness, and one which would never accrue,
until and unless the contract to which it refers had been
performed in accordance with a schedule recited in it. When
and as the mortgagee completed the work described in said
schedule, the sums respectively payable therefor, as stated
in the several items of the schedule, became due and pay-
able, and the mortgagors by said mortgage assumed no
obligation whatever other than to make such payments.
*Laeber v. Langhor,* 45 Md. 477; *Harris v. Hooper,* 50 Md.
537; *Code,* art. 66, sec. 2.

The contract offered in evidence and dated March 24th,
1926, was unquestionably the contract referred to in the
mortgage, which was dated March 23rd, 1926, for not only
was there no other contract between the parties, but it was
positively identified as the contract referred to in the mort-
gage as bearing "even date therewith." Under that contract
appellants agreed to pay the construction company $6,095
for the completion of the building referred to in it, but in
addition to paying it $1,000 as a result of its default they
were obliged to pay $377 for labor claims incurred by the
construction company, and enforceable against the property,
$4,700 to Apsley for completing the house, and there is
pending against them a claim for $350.10 for roofing it.
While the amount to be paid under the contract for the
construction of the house was to be paid in installments,
nevertheless the contract was entire and indivisible. *Jenks
v. Clay Products Company,* 138 Md. 574. And as the con-
struction company abandoned it without any legal excuse,
it was not entitled to recover any part of the compensation
agreed on. *Jenks v. Clay Products Co., supra; Helmer v.*

*Geis,* 149 Md. 89; 9 *C. J.* 812; *United States v. U. S. Fid. & Guar. Co.,* 236 U. S. 525; *Superintendent of Public Schools v. Bennett,* 27 N. J. L. 517; *Tompkins v. Dudley,* 25 N. Y. 272. Manifestly, therefore, the construction company would not have been entitled to enforce the mortgage against the appellants, because they owed it nothing. And the question then is, Does the lumber company stand in any different or better position? The liability of the appellants under the mortgage cannot be separated from their liability under the contract, for the mortgage was given to secure their compliance with the terms of the contract. But while the mortgage was assigned to the lumber company, the contract was not. But under the contract, of which the assignee had notice, the appellants were obliged, notwithstanding the assignment, to pay the several instalments for which it provided to the contractor, so that the utmost which the assignee secured from the assignment was the right to receive such sums of money as should become due under the contract, and could have been recovered in an action at law by the construction company. But as we have stated, that company could not, in the face of its wilful abandonment of the contract, have recovered anything for the work which it had done, either on the contract, or on a *quantum meruit* (*Helmer v. Geis, supra*), for "the whole price was to be paid for the whole building; the division of that sum into instalments, payable at certain stages of the work, was not intended to sever the entirety of the contract and make the payment of the installments, payment for such parts of the work as might be done when they were payable. This division was made, not to apportion the price to the different parts of the work, but to suit the wants of the contractor and aid him in the completion of the work; the consideration of the covenant to complete the building was the whole price, and not the mere balance that might remain after the payment of the installments. It can not be pretended that the contractor, after payment of a part of the installments, might refuse to go on and complete the building, and yet

retain that part of the price he had received; *Haslack v. Mayers,* 26 N. J. L. 284." *Superintendent of Public Schools v. Bennett, supra.* It is true that the appellants had constructive notice of the assignment, and it may be conceded, without deciding the question, that they were obliged to pay to the assignee any amount which they owed the assignor under the contract; and that payment to the assignor would not discharge their obligation to the assignee. But as they owed the assignor nothing, they were obliged to pay nothing to the assignee. Appellee contends, however, that appellants are liable under the mortgage, because the lumber company supplied the lumber which went into their house. But there is no force in that contention, because the mortgage was not given to secure a debt owed by the appellants to the lumber company, much less a debt due by the construction company to the lumber company, but to secure payment for work to be done in the future by the construction company for the appellants.

For these reasons the lower court erred in decreeing that the appellee should release the mortgage upon the payment of $750 to him by the appellants, but it should have decreed that the consideration for the mortgage had failed, and directed that it be cancelled. The decree appealed from will therefore be reversed and the case remanded, in order that a decree may be entered in accordance with the views expressed in this opinion.

> *Decree reversed and cause remanded, that a decree may be entered in accordance with the views expressed in this opinion, with costs to the appellants.*