Allen, J.
 

 It is not necessary to discuss the personal injury action filed by Texanna C. Smith out of which the judgment arose which was set aside upon the ground of fraud by the trial court in the instant case, except to state that in that action it was alleged in substance that Texanna C. Smith had suffered a serious and permanent injury while riding on one of the street cars of the Northern Ohio Power
 
 &
 
 Light Company.
 

 Mrs. Smith signed a written contract of employment with Charles I. Parlett to represent her as attorney in pressing this claim, and it was he who filed the suit against the company for damages. After Parlett’s
 
 *606
 
 employment one Giltner, claim agent for the Northern Ohio Power & Light Company, offered Mrs. Smith $2,500 in settlement, and subsequently raised his offer to $3,500, $2,750 of which Parlett stated was supposed to be for Mrs. Smith and $750 for Joseph E. Smith, her husband, for his claim for loss of services of his wife.
 

 Mrs. Smith’s action was filed December 15, 1925. The verdict actually rendered upon December 12, 1927, in her case, was for $2,750, exactly the same amount as the last sum offered through Parlett by Giltner. The record tends to show that Mrs. Smith at no time authorized a settlement at that figure, and always stated that she would not settle at anything like that figure. The record contains considerable testimony on the part of Mrs. Smith, her husband, her mother and a certain John Halderman, a disinterested witness, tending to show that on December 9, 1927, when the case was on the active list, of which fact she had actual notice, owing to physical disability Mrs. Smith was unable to be present in court. Halderman testified that he presented Parlett with a doctor’s statement relative to her illness. While Mrs. Smith had been notified by Parlett that the case was on the active list, the record shows that she did not have actual notice of the day when the case was finally called for hearing, which was December 12, 1927. However, an agreed verdict was entered in her absence, and because of the judgment rendered on this verdict, paid to Parlett and never accepted nor received by Mrs. Smith, the instant action was filed, praying to set aside this judgment on the ground of fraud.
 

 Two questions of moment are raised in this error proceeding.
 

 1. It is maintained by counsel for plaintiff in error that there is no evidence of knowledge or collusion on the part of the Northern Ohio Power & Light Company in the entering of the agreed verdict in the per
 
 *607
 
 sonal injury action, nor of knowledge that it was unauthorized hy Texanna C. Smith. The record does not show knowledge on the part of the attorneys for the company, but it does show knowledge upon the part of the claim agent, and hence knowledge upon the part of the company, and in fact it warrants a finding of collusion.
 

 The petition charges the absence of the client from court at the time that the agreed verdict was returned and the record shows that the defendant was represented in court by counsel at that specific time. No written authority from Mrs. Smith to enter the verdict is claimed to have been offered in evidence. Hence the absence of Mrs. Smith and the absence of any written sanction from her with reference to this agreed verdict were within the knowledge of the defendant company.
 

 The record shows that upon November 1, 1927, Parlett wrote the chief claim agent of the company as follows:
 

 “With reference to the case of Texanna C. Smith against The N. O. P. & L. Company, I have had the parties in this morning and they refuse absolutely to make a settlement of their ease in the sum of $3,500 and have ignored my recommendations in the matter.
 

 “At this time I wish to advise you that I have a contract with Mrs. Texanna C. Smith, covering her case, in writing, which provides that I shall receive for my- fee, one-third of the amount recovered, this contract being on a contingent fee basis. In addition to that there is some expense which has been contracted by me in the cost of the preparation of the case of approximately $200.00.
 

 “I am notifying you of this contract in order that my fees be protected in case a settlement is made. The probabilities are that she will employ some attorney in an effort to get a larger sum of money and my position is that inasmuch as I have secured what, in
 
 *608
 

 my
 
 judgment, was a favorable offer of settlement for her and her husband that my fee is earned.”
 

 An italicized notation appears in the record at the end of this letter, which is as follows:
 

 “Parlett explained further over the phone that he did not feel kindly toward Mrs. Smith. He did not discuss a division with her and her husband. He says case is worth no more because he cannot, prove unconsciousness at time of accident. He feels mastoid condition is chronic and not due to accident — at least entirely. JWG-.”
 

 This letter was in the possession of the claim agent at the time of the appearance of the company in court for the purpose of entering the agreed verdict.
 

 The record contains a letter written by Mrs. Smith to Charles I. Parlett, dated December 3, 1927, which reads as follows:
 

 “Please be advised I am confined to my home indefinitely on account of my head condition and under orders that I must not risk going out until same has entirely healed. Everytime I go out have an attack, so you will have to postpone the case until I can get out without detriment.
 

 “Sorry this happens but since Sept. 1st have been out mighty little. Sure would like to get this over with. But when I was going and ready to try they postponed on account of a convention, so surely one’s life is more than a convention and the Doctor says I am flirting with Eternity and have been every time I went with an attack.
 

 “Have never had any consideration since I have been injured but am at the place I am forced to demand it.
 

 “If you doubt my word shall be pleased to furnish the necessary papers to sustain me in my statements.
 

 “Have lost 3 yrs. salary............ $3,000
 

 ‘ ‘
 
 On account of not being able to shop myself have spent............... $1,500 extra
 

 
 *609
 
 “Help ............................. $1,500 paid
 

 “Doctor’s Bill so far................ $1,500
 

 “Permanent injury to eye and ear
 

 “4
 
 operations
 

 “2 more I fear to come
 

 “You can see why this proposition is very unjust.”
 

 It is conceded by Parlett that no different instruction was ever given him by Mrs. Smith.
 

 It is significant that while releases were supplied by Giltner and presented to Parlett to be executed by his client and by her husband, these releases never were executed. Parlett states that he notified Giltner that he probably could get no release. The company did not demand these releases at the time the verdict was taken, although two of counsel for the Northern Ohio Power & Light Company were in the room at the time. This is of peculiar significance' in view of the fact that it was the claim agent who was handling the case, a claim agent necessarily familiar with the fact that when a client has notified an attorney not to settle a case for a certain amount, she must have changed her mind in order for the attorney to be authorized to make a settlement for that precise amount.
 

 It is also significant that while Joseph E. Smith, husband of Texanna C. Smith, had filed no suit for services prior to this time and denied in court that he had ever authorized Parlett to act for him, Parlett himself drew a petition in the case of Joseph E. Smith against the Northern Ohio Power
 
 &
 
 Light Company at about the same time that the agreed verdict was taken. This petition was filed on December 12, 1927, on the same day that the agreed verdict was entered in the wife’s case. The petition in the wife’s case was filed in 1925. The petition in the husband’s ease was verified by Parlett as attorney, with the statement that he had personal knowledge of the facts, whereas he admitted on the witness stand that he had
 
 *610
 
 no such personal knowledge; that he relied merely on “investigation and interviews.” Parlett himself drew the answer for the Northern Ohio Power & Light Company in the husband’s case, submitted it to Giltner, the claim agent for the company, and asked in effect that it be verified by the secretary of the company, who, as Parlett said in his letter, “generally executes your pleadings.” Giltner testified that “supposedly” he did have the secretary of the company execute this answer. The petition, answer and reply in the husband’s case were filed on the same day, December 12, 1927. Upon this same day an agreed verdict was entered against the Northern Ohio Power & Light Company for $750 in favor of Joseph E. Smith, the exact sum which Parlett had stated was offered by Giltner to the husband and refused for that particular claim. Both judgments were paid to the clerk of the court upon December 15, 1927, three days after the agreed verdicts were rendered.
 

 Parlett receipted for the payment of these judgments. The records of this court show that Parlett has since tendered his resignation to this court, and that his certificate entitling him to practice law was cancelled and annulled by this court June 1, 1932.
 

 We think that the peculiar facts attending the taking of these two agreed verdicts, the absence of both Joseph E. Smith and Texanna C. Smith from court at the time; the drawing of an answer by Parlett for the Northern Ohio Power & Light Company when he represented the husband as plaintiff, ostensibly, in that action, the absence of releases which had been submitted by the company for signature by the Smiths, together with the fact that Parlett had notified the company in November that the parties refused absolutely to make such a settlement, and that he notified the company of the contract in order that his “fees be protected,” plus the fact that the agreed verdicts were rendered for the exact sum which Giltner had
 
 *611
 
 been notified would not be accepted, make out a distinct case of collusion between tbe claim agent and tbe attorney. The Northern Ohio Power
 
 &
 
 Light Company allowed the court to believe that the amount of the verdict was satisfactory, having in its possession a letter notifying it that the amount was anything but satisfactory. This constituted a fraud upon the court, practiced, not only by Parlett, but colluded in by the company through its claim agent. Therefore the court did not err in holding that fraud was established under the record and in vacating the judgment.
 

 We deem it unnecessary to consider the various technical questions raised with reference to Section 11631, General Code, for under the general equity power of the court, the statutory remedy in this state is not exclusive, but cumulative. The court had power under its general equity jurisdiction to set aside this judgment entered through fraud, irrespective of and unlimited by the provisions of Section 11631, General Code.
 
 Coates
 
 v.
 
 Chillicothe Branch of State Bank of Ohio,
 
 23 Ohio St., 415;
 
 Darst
 
 v.
 
 Phillips,
 
 41 Ohio St., 514;
 
 Michael
 
 v.
 
 American National Bank,
 
 84 Ohio St., 370, at 380, 95 N. E., 905, 38 L. R. A., (N. S.), 220;
 
 Citizens Savings Bank & Trust Co.
 
 v.
 
 Robison, Admx.,
 
 91 Ohio St., 421, 110 N. E., 1057, in which the judgment was affirmed on the authority of
 
 Darst
 
 v.
 
 Phillips, supra.
 
 These cases are cited with approval as recently as in the case of
 
 Christmann
 
 v.
 
 Coleman,
 
 117 Ohio St., 1, 157 N. E., 482.
 

 It is also stoutly maintained that the petition does not set forth a cause of action against this defendant. The petition does allege that the judgment was obtained by fraud practiced upon the court by one Charles I. Parlett, and that the case was during the absence of the plaintiff and without her knowledge or sanction presented to a jury. The petition makes no allegation of collusion, conspiracy or knowledge upon the part of the Northern Ohio Power & Light Com
 
 *612
 
 pany. No demurrer was filed, and no motion to make more definite and certain.
 

 Both in its answer and in the amended answer the defendant sets up that it relied upon Parlett’s representation that he was duly authorized to represent the plaintiff in connection with such claim, and was fully empowered by her to settle such claim, that it had no knowledge to the contrary and believed such representation to be true. No reply was filed. Both parties ignored the absence of a reply, and tried the case upon the allegation of good faith, contained in the answer of the defendant, that it had no knowledge that the representation of Charles I. Parlett was false.
 

 An objection was made at the outset of the trial to the introduction of any evidence, upon the ground that the petition did not state a cause of action, but counsel pointed out no specific ground of objection, and said he did not care to be heard on it.
 

 The court stated: “Frankly, I have not read the petition. If that motion is made in seriousness, I must read the petition in order to intelligently pass upon it.”
 

 Counsel for the company then said: “I say to the court frankly that I have not had an opportunity to go into this matter very carefully myself. I am making the motion very largely as a matter of precaution. ’ ’
 

 We therefore have a situation in which while, technically speaking, the absence of a reply constituted the admission of the new matter alleged in the answer (Section 11329, General Code), the defendant did not treat this new matter as admitted, but treated it as controverted. Therefore it waived any objection arising out of the absence of a reply. Furthermore, by including the allegation of good faith and of want of knowledge in its answer, it supplied the material allegation of knowledge and collusion lacking in the petition, and cannot now, after the rendering of judg
 
 *613
 
 ment, claim that the petition was defective. This is the long-established rule in the state of Ohio.
 

 In the case of
 
 Dayton Ins. Co.
 
 v.
 
 Kelly,
 
 24 Ohio St., 345, 15 Am. Rep., 612, it was held in the syllabus: “1. Where the defect in a petition to which a demurrer has been overruled consists in the omission to aver the performance of a condition precedent in the contract sued on, and it appears from the subsequent pleadings and record, that the defendant was not prejudiced thereby, the judgment will not be reversed.”
 

 The court, speaking of the pleadings, said at page 357: “If it were necessary to determine whether the •facts stated in the petition are sufficient to constitute a cause of action, we would probably resolve the question in the negative. * * * Now, we are all agreed that the defects in the petition, whatever they be, were supplied by averments in the answer and reply: so that, upon'the whole record, we find that the defects in the petition did not affect any substantial right of the defendant below.”
 

 In the ease of
 
 Union Ins. Co.
 
 v.
 
 McGookey & Moore,
 
 33 Ohio St., 555, at page 561, the court questions the sufficiency of the petition, and goes on to say:
 

 “In view of the state of the case, it is quite immaterial whether the petition, in this respect, be regarded as sufficient or not; for, if it be insufficient, the defect was cured by the subsequent pleadings and proceedings in the ease.
 

 “After the demurrer was overruled, the company answered the petition as if the ownership of the property by the insured was stated with sufficient clearness therein, and specifically denied that the defendants in error owned the lost property when the policy was issued, or at the time of its loss, and denied that they had lost anything by the fire; and the issues thus made were tried upon the evidence.”
 

 The fourth paragraph of the syllabus of the case holds: “Although a demurrer to a petition for want of
 
 *614
 
 a material fact is erroneously overruled, if the fact is properly put in issue by the subsequent pleadings and the case is tried thereon, the judgment can not be reversed for error in overruling the demurrer.”
 

 In the case of
 
 Yocum, Admr.,
 
 v.
 
 Allen,
 
 58 Ohio St., 280, 50 N. E., 909, Spear, C. J., speaking of the petition, at page 288, says: “If we were passing upon the question in a court of first instance, there would seem to be evident propriety in holding the pleading insufficient. But the question before this court is not whether this petition, tested by technical rules, states a case, but whether the error in overruling the demurrer has worked prejudice to the adverse party which requires a reversal of the judgment.”
 

 The court goes on to say: “It appears clear to us that the defects of the petition * * * were supplied, or at least rendered innocuous, by the answer and reply; so that, upon the whole record, these defects did not affect any substantial right of the defendant. ’ ’
 

 The first paragraph of the syllabus in that case reads as follows: “Where, in a cause pending in the court of common pleas a demurrer to a petition has been overruled, and upon issues made by answer and reply, the case has been tried to a jury and a verdict and judgment for plaintiff rendered, this court will not reverse the judgment, even though satisfied that the demurrer ought to have been sustained, provided it also appears, upon a consideration of the whole record, that the overruling of the demurrer was an error which was not prejudicial to the adverse party. ”
 

 The same doctrine was reaffirmed in
 
 Putnam
 
 v.
 
 Board of Commissioners of Paulding County,
 
 102 Ohio St., 45, 130 N. E., 165, in which the court in a unanimous judgment held that a defect in a petition which had been supplied by averments in the answer and reply was not prejudicial to the adverse party, and that the judgment rendered on the pleadings and
 
 *615
 
 evidence would not be reversed on error. Tbe first paragraph of the syllabus in that case holds: “Where a defect in a petition, to which a motion or a demurrer has been erroneously overruled, consists in the omission to plead the performance of a condition precedent in a contract sued on, or that such performance was prevented by the defendant, and it appears from the record that the omitted facts were properly put in issue by the answer and reply, and that the defendant has not been prejudiced, the judgment will not be reversed on error.”
 

 Applying this doctrine to the instant case, in view of the fact that no demurrer was filed, that no motion to make more definite and certain was filed, that the defendant company did not seriously press its objection to the petition nor point out any material allegation lacking therein, that it ignored the lack of a reply and went to trial fully entering into the issue of knowledge and good faith raised in its own answer and amended answer, we hold that the defendant was not prejudiced at the trial by the absence of the allegation of knowledge or collusion in the petition, nor by the absence of a reply, and overrule the objection in this court based upon the insufficiency of the petition.
 

 The court did not err in denying the defendant’s motion made June 19, 1931, asking that Charles I. Parlett and James A. Dillian, clerk of the court of common pleas, be made parties defendant. This motion was made some fifteen months after the actual hearing of the case, and in the hearing itself, so far from asking that new parties be made, when counsel for Mrs. Smith asked, “Do you want Mr. Parlett made a party?” the attorney for the company said, “I will leave that to Mr. Parlett’s judgment.” Mr. Parlett later said, “If your Honor please, I prefer to act only as a witness,” and no objection was made on the part of the company.
 

 
 *616
 
 Hence so far as Parlett was concerned the company acquiesced in his not being a party to the case.
 

 The judgment of the Court of Appeals will be affirmed.
 

 Judgment affirmed.
 

 Weygandt, C. J., Stephenson, Jones and Matthias, JJ., concur.
 

 Kinkade, J., not participating.