HOOFFSTETTER, APPELLEE, *v.* ADAMS, ADMR., ET AL., APPELLANTS.

(Decided March 17, 1941.)

*Messrs. Connor & Nester* and *Mr. Frank E. Steel,* for appellee.

*Messrs. Richards & Richards* and *Mr. W. J. Laub,* for appellants.

DOYLE, P. J.   This action originated in the Probate Court of Summit county.   It is presented to this court on direct appeal on questions of law and fact.

There is involved among other things the right of the creditor of an heir to bring an action in the Probate Court, predicated upon the ground of fraud and collusion between such heir and the administrator *de bonis non,* to set aside a judgment of that court, which judgment, allegedly wrongfully entered, deprived the creditor of his right to proceed against certain property of the heir; the question of the jurisdictional right of the court to entertain a proceeding bottomed upon such subject-matter; and whether the facts sustain the charge that the judgment was entered through such fraud and collusion.

Benton H. Adams died intestate on the 8th of October, 1922.   Carl E. Adams, a son, was appointed administrator, for the purpose of settling the estate in the Probate Court of Summit county.   On the 27th day of September, 1923, he, as administrator, filed a final account of his administration; the estate was duly closed and he was discharged.   Included in the assets was certain real property which was transferred

to the heirs in August, 1926. One, George E. Adams, a brother of the administrator, was a transferee.

On January 25, 1938, about 15 years after the filing of the final account, Carl E. Adams, upon application, was appointed administrator *de bonis non*. He represented to the court that his brother, George E. Adams, owed the estate of his father upon certain promissory notes which had not theretofore been listed among the assets.

On the same day and as a part of this appointment, the Probate Court approved a settlement, which the administrator *de bonis non* claimed to have made with his brother, and which authorized him as the administrator *de bonis non* to execute a discharge of the claimed obligation on the notes, in consideration of the transfer by brother George to the estate of certain stock in a company entitled "Adams Recreation Palace, Inc.," and in addition thereto his interest in the real estate inherited from his father. The property was duly assigned to the estate and the settlement consummated. On the following day, January 26, 1938, there was filed in the Probate Court, apparently for the purpose of the record, a supplementary inventory and appraisement, setting out the notes. This was the first record of any obligation of George E. Adams to his father's estate. The notes showed on their face that the latest one had been executed more than 18 years before.

Evidence in the record tends to prove that in the year 1934 the mother of the Adams boys informed son Carl that she possessed certain notes executed by son George to their father. The notes were dated October 6, 1913, January 15, 1914, January 10, 1915, and June 10, 1919, and were in the aggregate face amount of $4,393. They carried interest at the rate of 6 per cent, and no indorsements appeared upon them.

George thereupon gave to brother Carl the possession of his stock in the Adams Recreation Palace, Inc.,

without indorsement. At this time the stock had no value. Later, on June 21, 1935, George, in the presence of a witness, affixed his signature to the assignment clause on the certificates, and again gave them to brother Carl. On this date, however, the stock had a substantial worth due to a fire insurance adjustment which will be mentioned later. It should be further observed that on this date Carl had no office in the administration of the estate. It was at a time between the two periods in which he officially acted, and about three years before he was appointed administrator *de bonis non.*

In setting out the pertinent facts, it now becomes necessary to revert to the year 1928. Rudolph Hooffstetter, the plaintiff and appellee, entered into business with George E. Adams in 1928 in the city of Columbus. Pursuant thereto a corporation was organized and 120 shares of its capital stock was issued to Adams, who paid for it by borrowing $12,000 from the City National Bank & Trust Co. Hooffstetter made the loan possible by obligating himself to the bank for the payment of the full amount in the event of a default.

In the year 1933 Hooffstetter met the demand of the bank by paying the full amount of the note, due to Adams' default. The business venture into which they jointly entered was operated by Adams from 1928 until May 16, 1935. The relationship of the men was one of confidence in each other. Business reverses, however, overcame their company; the stock became worthless, and the company was declared insolvent by the courts in Franklin county.

Fate intervened, however, and on May 16, 1935, the capital assets of the stricken company became materially augmented due to a fire which destroyed most of its chattel property. A fire insurance coverage provided a substantial cash asset. (As heretofore noted, George E. Adams, on June 21, 1935, a few days more

than a month after the fire, indorsed his stock certificates in blank and gave them to his brother.)

A stockholders' meeting was held in February, 1936, and the stockholders voted a liquidating dividend, to be paid to the then "owners of the stock of the company, as the same appear on the stock books of the company" as of that date.

George E. Adams voted his stock at this meeting. The dividend was payable shortly thereafter, but Adams never requested nor received its payment.

A year or more after the declaration of the liquidating dividend by the stockholders, Hooffstetter attempted to induce his associate, Adams, to "turn in" his stock, secure the cash dividend, and apply it on his obligation which resulted from the payment of the note to the Columbus bank, and which debt represented money used by Adams to purchase the very stock upon which the liquidating dividend was declared. For the first time, Hooffstetter learned of the transfer of the stock. He was told by his associate that "he (George) had turned his stock over to his father's estate."

When Hooffstetter discovered that Adams had transferred his assets, he immediately and before said administrator *de bonis non* had been appointed instituted suit against George E. Adams in the Franklin county Common Pleas Court (spring of 1937), and on the 28th day of March, 1938, recovered a judgment in the amount of $12,982. Thereupon he, a judgment creditor, filed an affidavit of attachment in the said Franklin county court, in which proceeding he sought to determine the rightful ownership of the stock. The administrator *de bonis non* answered in the action and filed a cross-petition, which asserted that the stock had been legally transferred and assigned to the estate. In consideration of the case, after a full hearing, the court determined that the Probate Court of Summit county was the proper forum and dismissed the ac-

tion. The instant proceeding was then started in Summit county.

The proceeding now before this court was originally filed by Hooffstetter in the Probate Court of Summit county on the 12th day of January, 1940. It is styled "petition to set aside *ex parte* order of court herein rendered January 25, 1938, and for determination of ownership of alleged assets of this estate." We encounter the case on appeal in a *de novo* proceeding. The notice of appeal recited "on law and fact," and it was submitted as such by counsel for both sides.

The petition charges a fraudulent conspiracy between the brothers Adams to defeat the rightful claim of the plaintiff, a judgment creditor; that the administrator *de bonis non* knew of the claim of the plaintiff against his brother and knew that the property given over to him as administrator *de bonis non* constituted all of his brother's assets, and knew that, upon completion of the fraudulent settlement with the estate his brother would be insolvent and the judgment then entered in the Columbus court would be uncollectible; that the pretended claim of the estate on the notes alleged to have been given the father was worthless due to the fact that the statute of limitations had long since tolled. It is further alleged that the Adamses perpetrated acts of fraud upon the Probate Court when they procured the order of the said court on January 25, 1938; that the order was sought "with intent to hinder, delay and defraud" the creditors of George Adams, including this plaintiff, a judgment creditor. The plaintiff thereupon prayed:

"* * * that this court forthwith issue an order enjoining and restraining the defendant, Carl E. Adams, as administrator as aforesaid, from liquidating, or attempting to liquidate, distributing, or attempting to distribute, assigning, transferring, conveying or in any manner attempting to assign, transfer or convey, all or any part of the property acquired by

said administrator in said transaction of January 25, 1938, until the final determination of the issues herein; that the court find the said *ex parte* order herein entered on January 25, 1938, to be inoperative against, and null and void as to, this plaintiff, and as to the right and claim of said plaintiff to the properties therewith concerned; that the court accordingly order any and all assignments, transfers, deeds or conveyances executed by said administrator under favor of said *ex parte* proceeding and order of January 25, 1938, set aside and held for naught, and that the court further find said properties to be subject to the lien of plaintiff's said judgment; that the court may accordingly find and adjudge that no manner of right, claim or title exists in and to said properties, either in said administrator *de bonis non,* or any other heirs at law of decedent herein, and accordingly order and require said administrator to abandon all manner of right, claim and interest thereto in behalf of this estate; and said plaintiff further prays the court for all other and further orders and relief to which he may be found entitled, either at law or in equity.''

The petition sought to have the Probate Court set aside its former order and to declare ''said properties to be subject to the lien of plaintiff's judgment.''

Various answers were filed, including those of the administrator *de bonis non* and the various heirs of the testator.

The Probate Court upon the pleadings and the evidence determined:

1. That the purported assignment and transfer of the stock and properties from George E. Adams to the administrator *de bonis non* on January 25, 1938, was supported with no consideration.

2. That the administrator *de bonis non* knew on January 25, 1938, and ''prior thereto, that the said transferor, George E. Adams, was insolvent.''

3. That said transfer was made to defraud the plaintiff.

4. That the transferee, as administrator *de bonis non*, had knowledge of the fraud and participated therein.

5. That the transfer and assignment was not bona fide, "but was in fact void, and of no effect, and plaintiff is entitled to have said transfer and assignment set aside."

6. "That no manner of right, claim or title presently exists in and to the properties mentioned and described in said transfer and assignment" (the stock and an undivided interest in the real estate inherited), "either in said administrator *de bonis non*, or in any of the heirs at law of Benton H. Adams, deceased, by reason of said assignment and transfer of January 25, 1938."

The court thereupon "set aside and held for naught" its order of January 25, 1938, and further ordered "that the said Carl E. Adams, as administrator * * *, abandon all manner of right and claim to, or interest in, the properties mentioned and described in said former order of this court dated January 25, 1938, and in said assignment and transfer made by the defendant George E. Adams to said administrator on said date."

From this final order of the Probate Court, Carl E. Adams, individually and as administrator *de bonis non*, the brother George E. Adams, and the remaining heirs of Benton H. Adams, have perfected their appeal.

The appellants urged in the Probate Court and now insist in this court that the Probate Court lacked jurisdiction to hear and determine the matter presented; that a judgment creditor of an heir cannot under these circumstances inject himself into a proceeding in which he was neither a party nor one legally interested.

The Probate Court is not a court of general jurisdiction. The Legislature, however, may confer upon

it such jurisdiction as is not in conflict with other specific constitutional grants of authority.

Article IV, Section 8, Constitution of Ohio, provides:

"The Probate Court shall have jurisdiction in probate and testamentary matters, the appointment of administrators, and guardians, the settlement of the accounts of executors, administrators and guardians, and such jurisdiction in *habeas corpus,* the issuing of marriage licenses and for the sale of land by executors, administrators, and guardians, and such other jurisdiction, in any county, or counties, as may be provided by law."

An examination of the statutes which confer jurisdictional powers upon the court, pursuant to the above constitutional provision, discloses Section 10501-53, General Code, the last paragraph of which is:

"The Probate Court shall have plenary power *at law and in equity* fully to dispose of any matter properly before the court, unless the power is expressly otherwise limited or denied by statute." (Italics ours.)

This is a specific limited grant of equity jurisdiction *in all matters properly before the court.*

Our next inquiry directs our attention to the question of whether a petition to vacate a judgment is "properly before the court."

The Legislature seems to have answered this question in definite language when it enacted Section 10501-17, General Code. It provides:

"The Probate Court shall have the same power as the Common Pleas Court to vacate or modify its orders or judgments."

An analysis of the foregoing Code sections in the light of the Constitution directs the conclusion that there is vested in the Probate Court the same jurisdiction, not only under the statutes but in equity, to vacate or modify its own orders or judgments as is vested in the Court of Common Pleas to vacate its own orders.

The specific grant of power in Sections 10501-53 and 10501-17, General Code, does not grant *general* equity jurisdiction to the Probate Court. Its equity jurisdiction in that respect is confined to *those matters properly before it* and not otherwise limited or denied by statute.

The general principles of law applicable to the Court of Common Pleas, a court of general jurisdiction in law and equity, are therefore applicable to the jurisdictional questions arising in the case at bar.

The statutes of Ohio specifically provide grounds for the vacation of judgments in the Court of Common Pleas which now by virute of other statutes equally apply to the Probate Court. These remedies, however, which are set out in Section 11631, General Code, are not exclusive but are cumulative. (*Christmann* v. *Coleman,* 117 Ohio St., 1, 157 N. E., 482; *The Northern Ohio Power & Light Co.* v. *Smith,* 126 Ohio St., 601, 186 N. E., 712.) And the equitable powers vested in the Court of Common Pleas to set aside and vacate its orders or judgments for fraud are now by virtue of the above-mentioned provisions of the Probate Code likewise vested in the Probate Court in proceedings to vacate its judgments and orders, on the ground of fraud.

Neither Section 11631, General Code, heretofore mentioned, nor Section 11640, General Code, which latter section provides a time limitation for the bringing of actions, has a controlling effect where the proceedings are in equity for the purpose of impeaching a judgment for fraud. Likewise, Section 11637, General Code, has no effect upon such proceedings. It is unnecessary to first show ''a valid defense to the action in which the judgment was rendered,'' as claimed by the defendants. One reason among the many which could be given, is that we recognize, for the purpose of this decision, this to be an equitable proceeding and not one brought under the statutes.

It has long been recognized that courts vested with

equitable jurisdiction as to particular matters possess power to exercise an efficient control over their proceedings in reference to such matters and to protect every person actually interested in the result from injustice and fraud, and that they will not allow themselves to be made instruments of wrong, not only because of their detestation of all things conducive to wrong but also because of their own character and dignity.

And so, creditors of persons who through fraudulent contrivance or fraudulent complicity with others cause a judgment to be rendered by which they are divested of their property with a design to defraud their creditors, may resort to courts having equity jurisdiction for relief against such injustice. A dishonest and collusive judgment is open to attack when it comes in contact with creditors. The fraud cannot stand even though it is in the form of a judgment. And this is especially so when it is considered in the light of a fraud upon the court. Fraud in such cases is regarded not only upon the person aggrieved but likewise upon the court itself.

"When a judgment or decree of any court, whether inferior or superior, has been obtained by fraud, the fraud is regarded as perpetrated upon the court * * *." 2 Pomeroy's Equity Jurisprudence (4 Ed.), Section 919.

"* * * whenever a judgment or decree is procured through the fraud of either of the parties, or by the collusion of both, for the purpose of defrauding some third person, he may escape from the injury thus attempted by showing, even in a collateral proceeding, the fraud or collusion by which the judgment or decree was obtained. The fraud, however, must be such as directly affects him." 1 Freeman on Judgments (5 Ed.), Section 318.

" 'Judgments of any court can be impeached by strangers' " (whose rights are affected thereby) " 'to

them for fraud or collusion; but no judgment can be impeached for fraud by a party or privy to it,' " unless the fraud consists of extrinsic acts outside of and collateral to the matter actually tried by the first court. *Ibid.*, quoting from Cowen, Hill, and Edwards' Note 291 to Phillips on Evidence, and citing *Peck* v. *Woodbridge*, 3 Day (Conn.), 30, and other cases. And, see, *Michael* v. *American National Bank,* 84 Ohio St., 370, 95 N. E., 905.

The following quotations and citations bear out the principle involved:

"Judgment creditors whose interests are affected may maintain an application to vacate a prior judgment against their debtor upon the ground that such judgment is fraudulent as to them * * *." 34 Corpus Juris, Judgments, Section 562.

"It is a well-settled general rule that whenever the rights of third persons are affected they may collaterally attack a judgment for fraud committed by one party or for collusion of both parties." 31 American Jurisprudence, Judgments, Section 596.

It is therefore our conclusion that a judgment creditor of a person who is not a debtor of an estate, even though such judgment creditor was not a party to the proceedings in the administration of such estate, can invoke the jurisdiction of the Probate Court in a proceeding to set aside a former order of such court, when he charges that the administrator entered into a conspiracy with his (the creditor's) judgment debtor for the purpose of fraudulently aiding such judgment debtor to transfer to the estate, his distributive share of the estate and other property, in defraud of his creditors, and in pursuance of such conspiracy obtains *ex parte* the approval of such fraudulent transaction by the Probate Court.

We believe the rule announced is salutary. The law should not be a shield and covert for fraudulent and lawless practices. The high aims of justice should not

be circumvented by the technicalities of legal procedure.

Directing attention now to the evidence offered upon the trial, the members of this court are of the unanimous opinion that the conclusions reached by the Probate Court upon the identical evidence now before this court were fully warranted and justified. We determine that there was shown to exist by the necessary degree of proof a fraudulent conspiracy between the administrator *de bonis non,* and his brother George E. Adams, to defraud the plaintiff creditor, and that the plaintiff creditor has pursued the proper remedy, in an appropriate action in a court which possessed jurisdiction, to right the wrong shown so clearly to exist.

Counsel have argued both orally and by brief that there is involved in this case the question of a "declaratory judgment."

The pleadings have been carefully examined, and we find that the proceeding was not one asking for a declaratory judgment, but was an application to the court to set aside an order of the court made at the instance of an officer of the court and induced by the fraud of such officer and another party. The prayer in the petition that such officer be divested of any advantage acquired by such order is merely an incident necessarily arising from a granting of the specific relief asked. And this being so, the administrator is divested of the property acquired by virtue of his fraudulent conduct, as a matter of law, in the same manner as in any other action to set aside a fraudulent conveyance, and an order to that effect is proper; but we are not permitted, under the evidence in this case, to determine the extent of rights of plaintiff alone in such property.

A decree may be drawn the same as was entered by the Probate Court. *Decree accordingly.*

STEVENS and WASHBURN, JJ., concur.