600 A.2d 899

STERLING MIRROR OF MARYLAND, INC., et al.

v.

Sadegh RAHBAR, et ux.

STERLING MIRROR OF MARYLAND, INC., et al.

v.

Scott D. SMITH, et ux.

STERLING MIRROR OF MARYLAND, INC., et al.

v.

Paul E. BURCH, et ux.

STERLING MIRROR OF MARYLAND, INC., et al.

v.

Roger L. FLYNN, et ux.

Nos. 225–228, Sept. Term, 1991.

Court of Special Appeals of Maryland.

Jan. 30, 1992.

Fred A. Thompson (George B. Burgess & Associates, P.A., on the brief), Upper Marlboro, for appellants.

John L. Erly (Laurence W.B. Cumberland, on the brief), Prince Frederick, for appellees, Rahbar and Burch.

Richard E. Hagerty, and Miles & Stockbridge, Rockville, on the brief, for appellees, Smith, et ux.

No brief for appellees, Flynn, et ux.

Argued before CATHELL, MOTZ and HARRELL, JJ.

HARRELL, Judge.

Appellant, Sterling Mirror of Maryland, Inc., filed four Petitions to Establish and Enforce Mechanics' Liens against Roger and Cheryl Flynn, Sadegh and Moky Rahbar, Scott and Barbara Smith, and Paul and Leigh Burch, respectively.[1] In each case, the Circuit Court for Calvert County denied the lien after finding that the appellant had failed to prove that the appellees were not bona fide purchasers for value of the dwellings that were the subject of the mechanics' lien petitions.[2]

The sole issue raised by the appellant in each appeal is whether the trial court erred in ruling that the purchasers, who acquired legal title to the dwellings while subcontractors were working on the premises, were bona fide purchasers for value under Md. Real Prop.Code Ann. § 9–102(d).

### Facts

On 19 February 1990, the appellant entered into an agreement with COMACS, Inc. ("COMACS") to furnish and install mirrors, sliding mirrored doors, bathroom accessories and other specialty items for homes being built by COMACS in a project known as "Somerset" in Calvert County, Maryland. COMACS was to perform as the general con-

---

1. The four cases have been consolidated for purposes of this appeal.

2. In the Burches' case, the trial court granted summary judgment in favor of the defendant-appellees. In the Flynns' case, the trial court granted the defendant-appellees' Motion for Judgment and dismissed the Petition for Mechanics' Lien.

tractor of the subdivision while the appellant was one of the subcontractors hired by COMACS.

On 22 March 1990, Roger and Cheryl Flynn purchased and took title, as tenants by the entirety, to lot 17 and a house on the lot that was under construction by COMACS in the "Somerset" subdivision.[3] On or about 14 May 1990, appellant began to perform under the subcontract, providing bathroom enclosures and accessories, shelving, door accessories and locks to the Flynn property. Appellant completed performance of the contract at the Flynn property in mid-July[4], but never received payment from the contractor, COMACS.

On 10 May 1990, appellant began shipping and installing goods under the subcontract to the house under construction on lot 25 in the "Somerset" subdivision. On 21 May 1990, Sadegh and Moky Rahbar purchased and took title to lot 25 as tenants by the entireties. Appellant completed its work on or about 26 July 1990, but never received payment from the contractor, COMACS.

On 7 May 1990, appellant began shipping and installing goods under the subcontract to the house under construction on lot 21 of the "Somerset" subdivision. Scott and Barbara Smith purchased and took title to lot 21 as tenants by the entireties on 25 May 1990. Appellant completed its work under the contract on or about 2 July 1990, but never received payment from the contractor, COMACS.

Finally, on 1 June 1990, appellant began shipping and installing goods under the subcontract to the house under construction on lot 18 of the "Somerset" subdivision. On 19

---

**3.** Of the four cases presented in this appeal, only the Flynns took title to their property prior to the time when appellant began to perform under the subcontract.

**4.** In its Brief, the appellant states that it completed performance of the contract on or about 3 July 1990. In the Petition to Establish and Enforce Mechanic's Lien, however, the appellant states that it furnished work and materials during the period of 14 May through 26 July 1990.

June 1990, Paul and Leigh Burch purchased and took title to lot 18 as tenants by the entireties. Appellant completed its work on or about 2 July 1990, but never received payment from the contractor, COMACS.

In each of the above cases, appellant demanded payment from COMACS. Since appellant never received payment from COMACS, it subsequently pursued mechanics' lien actions against the appellees and their properties.

### Discussion

In each of the instant cases the trial court denied appellant's Petition to Establish and Enforce Mechanic's Lien because the appellant failed to meet its burden of proving that the appellees were not bona fide purchasers of the subject properties. Appellant argues that a purchaser who acquires legal title while subcontractors are working on a dwelling cannot be a bona fide purchaser under Md.Real Prop.Code Ann. § 9–102(d), *infra,* since the purchaser has constructive notice that claims may arise by subcontractors who may not ultimately be paid for their work or materials. Appellant's argument misapprehends the trial court's rulings and the nature of this appeal. In each case, the trial court concluded that the appellant failed to meet its burden of proving that the appellees were not bona fide purchasers for value. None of the various trial court rulings decided that an intervening purchaser can never have notice of a potential claim so as to destroy its bona fide purchaser status. Our review of the final judgments, the Briefs and the Records for each of the cases *sub judice* convinces us that the lower court rulings must be affirmed.

■ Maryland's Real Property Article, § 9–102(a), which authorizes the imposition of mechanics' liens, provides, in relevant part, that "[e]very building erected ... is subject to establishmei.t of a lien in accordance with this subtitle for the payment of all debts ... contracted ... for materials furnished for or about the building...." Section 9–

102(d) provides an exemption from this provision. It provides:

> However, a building or the land on which the building is erected may not be subjected to a lien under this subtitle if, prior to the establishment of a lien in accordance with this subtitle, legal title has been granted to a bona fide purchaser for value.

Clearly, the mere taking of legal title prior to the establishment of a lien does not serve to exempt the property under § 9–102(d). *Talbott Lumber Co. v. Tymann,* 48 Md.App. 647, 650, n. 2, 428 A.2d 1229 (1981). The statute plainly requires that the intervening purchaser be a bona fide purchaser for value. *Id.*

The burden of establishing the right to a lien is on the claimant. *Id.* at 653, 428 A.2d 1229. The claimant's general burden includes proving that an intervening owner is not a bona fide purchaser for value. *Id.* The property owner need do no more than contravene a claimant's allegation in order to challenge the validity of the claim. He or she need offer no evidence of his or her status except in response to evidence first offered by the claimant tending to show that the property owner is not a bona fide purchaser for value. *Id.* at 653–54, 428 A.2d 1229.

In the instant cases, the petitions to establish mechanics' liens were devoid of any evidence tending to show that the appellees were not bona fide purchasers for value. In fact, the petitions merely set forth facts and attached exhibits (deeds and deeds of trust) which tended to establish that the appellees were indeed bona fide purchasers for value. Moreover, at the various hearings held on the petitions, appellant failed to offer any evidence to prove that appellees were not bona fide purchasers for value. The absence of a statutory or judicially-declared definition of the phrase "bona fide purchaser for value" in Maryland does not excuse the appellant from making any effort to meet its burden to produce evidence as required by our opinion in the *Talbott Lumber* case. We shall review the judgment in each of the cases before us, *seriatim.*

*The Flynns*

■ On 27 December 1990, a show cause hearing was held on the appellant's Petition to Establish and Enforce Mechanic's Lien against property owned by Roger and Cheryl Flynn. The evidence demonstrated that the Flynns had purchased their property for value on 22 March 1990, approximately two months before the appellant began to supply and install materials. At the close of the appellant's case, counsel for the Flynns made a Motion for Judgment. Counsel for the appellant opposed the motion, arguing that "the Flynns were not bonified [sic] purchasers for value because they had notice, based on the evidence accepted by Your Honor that they knew that there was work still being done." During the entire course of the hearing, however, no evidence was admitted to show that the Flynns had actual notice, and there was no evidence, apart from the appellant's bald allegations, that the Flynns had constructive notice that there may be claims against the property by subcontractors for non-payment. In fact, appellant presented no evidence regarding the Flynns' lack of status as bona fide purchasers for value. To the contrary, appellant established that the Flynns executed a purchase money deed of trust in the principal amount of $278,200, representing the financed portion of the total $361,300 which they paid for the property.

■ The purpose of Maryland's Mechanics' Lien Statute, Md.Real Prop.Code Ann. § 9–101 *et seq.*, is to protect those who furnish labor and materials during the construction process. *Riley v. Abrams,* 287 Md. 348, 412 A.2d 996 (1980). While it is true that the mechanics' lien law is remedial and is to be construed in the most liberal and comprehensive manner in favor of mechanics and materialmen, courts have no power to extend it to cases beyond the obvious designs and plain requirements of the statute. *Freeform Pools, Inc. v. Strawbridge Home for Boys, Inc.,* 228 Md. 297, 301, 179 A.2d 683 (1962); *Caton Ridge, Inc. v. Bonnett,* 245 Md. 268, 225 A.2d 853 (1967). Although we recognize that the Mechanics' Lien Statute is designed to

protect subcontractors generally, the provisions of § 9–102(d) make it clear that the statute was not intended to protect subcontractors against bona fide purchasers for value. The *Talbott Lumber* case clearly places on claimants the burden of establishing the right to a lien and proving that the property owner is not a bona fide purchaser for value. That burden was not met in the Flynns' case. Consequently, we hold that the circuit court did not err in granting the Flynns' Motion for Judgment.

### The Rahbars

On 2 January 1991, a hearing was held on appellant's Petition to Establish and Enforce Mechanic's Lien against property owned by Sadegh and Moky Rahbar. At that hearing the following colloquy occurred:

THE COURT: In other words, you're not suggesting that they had any reason to know that the bills were not being paid. You're not suggesting they had any reason to know there was any leave [sic] pending. You're only saying that because there was work which, and we don't know how much, but there was some—the mirrors apparently, some part of the erection of the mirrors or the installation of the mirrors, that that alone is sufficient to put them on notice?

[APPELLANT'S COUNSEL]: That's correct, your Honor.

THE COURT: That's all the proof you have. Is that correct?

[APPELLANT'S COUNSEL]: That's it, your Honor. While work was being done they ended up buying this or becoming the owners of this property. The work was not completed. Had the work been completed, your Honor, and everything finished and the Rahbars come along and buy the house, then yes, they would be bonified purchasers for value because they wouldn't know when construction had ended. They would be protected by this statue [sic]. But if they buy it during the construction, then they in essence are the builders.

Here, as in the Flynn's case, the appellant failed to produce any evidence, aside from the mere allegation that the Rahbars were on notice, to show that the Rahbars were not bona fide purchasers for value. Again, appellant only produced evidence that the Rahbars had paid $383,000 for their property and had executed a purchase money deed of trust in the principal amount of $280,000. Since the appellant did not meet the burden of proof set forth in the *Talbott Lumber* case, the property owned by the Rahbars falls within the exemption provided by § 9–102(d). The circuit court's denial of appellant's Petition to Establish and Enforce Mechanics' Lien must, therefore, be affirmed.

### The Smiths

On 2 January 1991, a show cause hearing was held on appellant's Motion to Establish and Enforce Mechanic's Lien against property owned by Scott and Barbara Smith. During the hearing the appellant presented the following argument:

[THE COURT]: Again, in your case here, you're claiming that they did have notice because some of the mirrors or some of the items were not installed, is that correct?

[APPELLANT'S COUNSEL]: That's correct. They were being installed while they assumed ownership.

> \* \* \* \* \* \*

[THE COURT]: I mean don't you have to prove that, prove that some circumstance that would make it less than—that they have tried to sell to a cousin or an officer.

[APPELLANT'S COUNSEL]: But, your Honor, what if they just sell it to someone while it's being constructed. Anyone, a friend, a cousin. Yes, I mean if we could prove it, sure, we would present that. But what we're saying is that while the house is under construction the contractor steps out and the purchaser steps into the shoes of that contractor and assumes any risks that the subcontractors weren't paid.

> To be a bonified [sic] purchaser they would buy it after it's completed when they have no reason to inquire into whether subcontractors weren't paid.[5]

After hearing argument from both parties, the trial court ruled as follows:

> I do think that the Talbott Lumber Case requires that there be some—that the burden is on the Plaintiff here to show that they are not a bonified [sic] purchaser for value or that there is some notice, they were put on some kind of notice.

> I don't think that just the work being done, particularly when you're talking about twenty-seven hundred dollars worth of glass work or mirror work is sufficient to put a person on notice. Accordingly I will deny the Interlocutory or any Mechanic's Lien in this particular case.

After a thorough review of the Briefs and the Record in the instant case, we find that the trial court's ruling was correct. There was no evidence presented either in the Petition or at the Show Cause Hearing tending to prove that the Smiths were not bona fide purchasers for value. Appellant offered proof that the Smiths paid $414,140 for the property and executed a purchase money deed of trust in the principal amount of $331,300. Aside from the appellant's allegations, however, there was no evidence that the Smiths had any notice whatsoever of appellant's claim or potential claim or that the Smiths had any reasonable cause to make inquiry into whether there were any claims as of the time they purchased the realty. Since the appellant has failed to meet its burden under the *Talbott Lumber* case,

---

5. If appellant's position that all construction must be completed before settlement in order for a buyer to be a bona fide purchaser were correct, the common practice of utilizing at settlement a "punch list" for the completion or correction of minor items would be foreclosed. Considering the stage of completion of the homes in the cases *sub judice* and their value (in some cases upwards of $400,000), the relatively small sums sought by appellant may well represent claims for payment for "punch list" type items. We cannot discern from the record, however, whether they were so considered.

the Smiths are entitled to the exemption provided by § 9–102(d).

### The Burches

On 27 December 1990, a Show Cause hearing was held on appellant's Motion to Establish and Enforce Mechanic's Lien against property owned by Paul and Leigh Burch. The circuit court granted the Burches' Motion for Summary Judgment stating:

> ... I think under these exemptions the [legislative] intent was that if it was settlement and unless there is some showing that he was not a bonified [sic] purchaser, I don't think this is a fact that it was ongoing work at the time of the settlement. It's not enough.

As in the three previously discussed cases, the appellant failed to meet the burden set forth in the *Talbott Lumber* case. The appellant merely argued "that the property in question was purchased while construction was ongoing. Therefore, they were on notice that there may be subcontractors who have not been paid. Therefore, they are not bonified [sic] purchasers for value because they aren't innocent purchasers. They have notes [sic]. A bonified [sic] purchaser for value was a purchaser without notice." Once again, appellant proved only that the Burches paid $433,900 for the property, of which $347,000 was in the form of a purchase money deed of trust. Since the appellant failed to offer any evidence tending to show that the Burches were not bona fide purchasers for value, we find that the trial court did not err in granting the Motion for Summary Judgment.

JUDGMENTS AFFIRMED; COSTS IN EACH CASE TO BE PAID BY APPELLANT.