654 A.2d 949

**BENNETT HEATING & AIR CONDITIONING, INC., et al.**

**v.**

**NATIONSBANK OF MARYLAND, et al.**

**BENNETT HEATING & AIR CONDITIONING, INC., et al.**

**v.**

**AMMENDALE BUSINESS CAMPUS LIMITED PARTNERSHIP.**

Nos. 899, 900, Sept. Term, 1994.

Court of Special Appeals of Maryland.

March 3, 1995.

James T. Draude (Driscoll & Draude, on the brief), Washington, DC, for appellants.

Jeffrey W. Larroca (F. Joseph Nealon, Constantinos G. Panagopoulos and Ballard, Spahr, Andrews & Ingersoll, on the brief), Washington, DC, for appellee, NationsBank.

Mark S. Carlin (Sherman, Meehan & Curtin, P.C., on the brief), Washington, DC, for other appellees.

Argued before MOYLAN, BLOOM and FISCHER, JJ.

BLOOM, Judge.

Appellants, Bennett Heating & Air Conditioning, Inc. and four other subcontractors, performed construction work on a commercial building located on property that was owned by appellee Ammendale Business Campus Limited Partnership (Ammendale LP). The property was subject to three deeds of trust securing loans made by Sovran Bank/Maryland, which is now known as NationsBank of Maryland, N.A. (NationsBank). NationsBank foreclosed on the deeds of trust and sold the property.

Appellants, who have never received payment for the work and materials they put into the construction of the commercial building on the property, brought an action in the Circuit Court for Prince George's County against appellees, NationsBank, Ammendale LP, ELV/Ammendale I, Inc. (ELV/Ammendale), Carfax Enterprises Limited Partnership (Carfax), Banbury Associates Limited Partnership (Banbury LP), and Banbury Real Estate Investment, Inc. (Banbury Investment).[1] Appellants' complaint was amended three times; the Third Amended Complaint sought to set aside the foreclosure sale on the basis of fraud (Count I) and asserted claims for breach of contract, unjust enrichment, and *quantum meruit* (Counts II through VIII). NationsBank and the other four appellees

---

1. ELV/Ammendale is a general partner in Ammendale LP. Carfax is a limited partner in Ammendale LP. Banbury Investment is the general partner of Banbury LP.

collectively filed motions to dismiss most of the counts in the complaint, pursuant to Md. Rule 2–322(b), for failure to state a claim upon which relief could be granted. The circuit court granted those motions and entered a judgment dismissing the entire complaint. Appellants timely noted a consolidated appeal to this Court, in which they present the following issues, which we have reordered:

I. Whether the subcontractors' Third Amended Complaint (Count I) states grounds to set aside the foreclosure sale.

II. Whether the subcontractors' Third Amended Complaint (Counts II, III, IV, VI, and VIII) states a claim in *quantum meruit* against the defendants.

III. Whether the subcontractors' Third Amended Complaint (Counts V and VII) states breach of contract claims against defendants Ammendale Business Campus Limited Partnership and ELV/Ammendale I, Inc.

## FACTS

Appellants' version of the facts, which we accept as true for purposes of reviewing the lower court's grant of appellees' motions to dismiss, is as follows.

Ammendale LP, which is owned and controlled by a group of British investors represented by David B. Law (British Investors), purchased property in Prince George's County known as Ammendale Business Campus (the property) in 1987. Ammendale LP had received loans from NationsBank to finance the acquisition of the property and the construction of six commercial buildings to be located on the property. The loans were secured by three deeds of trust on the property. From 1990 to early 1991, the British Investors and NationsBank discussed the funding of a sixth building on the property and the possible re-negotiation of Ammendale LP's original financing of the property.

In November 1989, after five buildings had been constructed, Ammendale LP contracted with Michael, Harris & Rosato Brothers, Inc. (MHR), the general contractor, for the con-

struction of the sixth commercial building (Building F) for $1,427,529. Ammendale LP also contracted with MHR in June 1990 for tenant improvement work on Building F for $180,881. MHR subcontracted with appellants to perform work required under MHR's contracts with Ammendale LP. MHR and appellants completed their work on Building F in 1990.

On 29 October 1990, MHR filed suit to establish a mechanics' lien on the property. This lien included the amount owed to the appellants for their work on Building F. Two appellants, Bennett Heating and Air Conditioning, Inc. (Bennett) and D & L Electric, Inc. (D & L) obtained final orders establishing mechanics' liens on the property on 28 November 1990 and 15 March 1991.

In March 1991, Ammendale LP, which still owed NationsBank $23,592,806, defaulted on its loans. NationsBank, through substituted trustees, instituted foreclosure proceedings on the property, which was Ammendale LP's only asset. At the time of the foreclosure, Ammendale LP still owed MHR $902,834 under the contract to build Building F and the entire $180,881 under the contract for tenant improvements to the building. Appellants had not received any payment for their work.

On 22 March 1991, the property was sold at foreclosure for $21,050,000 to the sole bidder, Metropolitan Commercial Properties (Metropolitan), a subsidiary of NationsBank. Metropolitan then assigned its rights as purchaser to Banbury LP, which is owned and controlled by the British Investors. This assignment and substitution was ratified by the Circuit Court for Prince George's County in May 1991.

To finance its purchase of the property, Banbury LP borrowed $18,675,000 from NationsBank and agreed to pay NationsBank "additional yield" up to $3,479,038 contingent upon the proceeds derived from the property by Banbury LP. Banbury LP borrowed an additional $1,000,000 from NationsBank to finance improvements to the property. These loans are secured by three deeds of trust on the property.

After the ratification of the foreclosure sale in May 1991, appellants Bennett, D & L, and Anne Arundel Fire Protection, Inc. filed a complaint against appellees, seeking damages for unjust enrichment, *quantum meruit,* and breach of contract. In December 1991, that complaint was amended to include appellant William Dale Judy (Judy) as a plaintiff and to add a fifth and sixth count to the complaint. NationsBank filed a Motion to Dismiss or, Alternatively, for Summary Judgment, which the court granted.

Appellants thereafter filed a Second Amended Complaint, adding appellant Dennis Stubbs Plumbing, Inc. as a plaintiff and also adding a seventh count to the complaint. Although the Second Amended Complaint named NationsBank as a defendant, appellants stated that they were not pursuing any claims against NationsBank since the court had granted NationsBank's motion for dismissal of the complaint as to it. Banbury LP and Banbury Investment then filed a Motion for Summary Judgment, and a few days later ELV Ammendale filed a Motion for Partial Summary Judgment and Carfax filed a Motion for Summary Judgment.

Appellants, in turn, filed a Motion to Vacate Dismissal of Defendant NationsBank of Maryland. The circuit court, after hearing arguments on that motion and on appellees' motions for summary judgment, concluded that appellants' *quantum meruit* and unjust enrichment claims were barred unless the foreclosure sale were set aside. The court granted leave for appellants to amend their Second Amended Complaint.

Appellants then filed their Third Amended Complaint, which included NationsBank as a defendant and added a count petitioning the court to set aside the foreclosure sale on the basis of fraud. Appellees countered with motions to dismiss various counts of the Third Amended Complaint. The court granted those motions and dismissed the entire complaint. This appeal is from that judgment.

Banbury LP presently owns and operates the property as a commercial business park. The first five buildings constructed on the property are occupied fully by tenants, and Building

F has a tenant in the space improved by appellants' work and materials.

## DISCUSSION

■ In reviewing the grant of a motion to dismiss pursuant to Maryland Rule 2–322(b), "we must assume the truth of all relevant and material facts that are well pleaded and all inferences which can be reasonably drawn from those pleadings." *Sharrow v. State Farm Mut. Auto. Ins. Co.,* 306 Md. 754, 768, 511 A.2d 492 (1986). "[T]he complaint should not be dismissed unless it appears that no set of facts can be proven in support of the claim set forth therein." *Ungar v. State,* 63 Md.App. 472, 479, 492 A.2d 1336 (1985), *cert. denied,* 475 U.S. 1066, 106 S.Ct. 1379, 89 L.Ed.2d 604 (1986). With these considerations in mind, we shall address the issues in the present case.

### I.

■ Appellants contend that the circuit court erred in dismissing Count I of appellants' complaint, which petitions the court to set aside the foreclosure sale, for failing to state a claim upon which relief can be granted. Appellants allege in Count I that the foreclosure on the property "was a sham conducted pursuant to collusion between the mortgagor and the mortgagee in order to cut off the mechanics' lien rights of MHR and the Subcontractors." Appellants assert that the "Foreclosure Sale was infected with fraud, illegality, and improper dealings and [the final order ratifying the sale] should be set aside...."

Specifically, the pertinent allegations set forth in Count I of the Third Amended Complaint are as follows:

21. In an attempt to avoid paying MHR and plaintiffs for the work done on Building F, the British Investors (representing Ammendale LP and the other defendants) and NationsBank agreed: a) that NationsBank would foreclose on the Property and would purchase the Property at the foreclosure sale at an agreed price, and b) that after fore-

closure, NationsBank would sell the Property back to the British Investors for the agreed price, and c) that Nations-Bank would lend the British Investors funds to finance the re-purchase of the Property.

. . . .

28. The Foreclosure Sale was a sham conducted pursuant to collusion between the mortgagor and the mortgagee in order to cut off the mechanics' lien rights of MHR and plaintiffs. The British Investors, who owned and controlled Ammendale LP (the mortgagor), and NationsBank (the mortgagee) agreed in advance to the Foreclosure Sale, agreed on the price to be bid at the Foreclosure Sale, agreed that NationsBank would sell the Property back to the British Investors at that agreed price, and agreed that NationsBank would lend the British Investors the funds necessary to repurchase the Property.

29. The Foreclosure Sale was used by defendants as a mechanism to transfer the Property from one set of entities owned and controlled by the British Investors (Ammendale LP and ELV/Ammendale) to another set of entities owned and controlled by the British Investors (Banbury LP and Banbury Investment) in an attempt to avoid paying MHR and plaintiffs for the work done on Building F.

30. The Foreclosure Sale was infected with fraud, illegality, and improper dealings and should be set aside by [the circuit court].

■ Appellants were not parties to the action in which the judgment ratifying the foreclosure sale was entered. Nevertheless, they are attempting, through this separate and independent judicial proceeding, to have the judgment in the foreclosure case vacated. The first count of their complaint thus amounts to a collateral attack on that judgment by a third party. *See Fisher v. DeMarr*, 226 Md. 509, 514–15, 174 A.2d 345 (1961). Although it is a general rule in Maryland that "a ratified foreclosure proceeding may not be collaterally assailed," *Kline v. Chase Manhattan Bank*, 43 Md.App. 133,

144, 403 A.2d 395 (1979), we are unable to find any decisions by Maryland's appellate courts addressing a collateral attack in the context of the facts alleged in the present case. There is, however, dicta in the case of *Harris v. Hooper*, 50 Md. 537 (1879), to the effect that a subsequent encumbrancer, such as one who obtains a judgment against the mortgagor after the date of the mortgage (or perhaps, as in this case, one who obtains a mechanic's lien against mortgaged premises), who was not made a party to the foreclosure proceedings, may intervene therein and seek satisfaction of his lien out of any mortgage sale proceeds remaining after payment of the sums due under the mortgage, or might seek more complete relief by a separate action to annul the decree and set the sale aside for fraud either in obtaining the deed or in the sale. *Id.* at 548–49.

Other jurisdictions that have considered collateral attacks in factual circumstances similar to those in this case have concluded that third party creditors may collaterally impeach a judgment for fraud committed by either party to that judgment or for the collusion of both parties thereto in obtaining the judgment, if the creditor had vested rights that would be impaired if the judgment were given full credit and the fraud or collusion was committed for the purpose of defrauding a third person. *See Hartford Accident and Indem. Co. v. Phoenix Sand & Rock, Inc.*, 116 Ariz. 366, 569 P.2d 308, 313 (Ct.App.1977); *Stearns v. Los Angeles City School Dist.*, 244 Cal.App.2d 696, 53 Cal.Rptr. 482, 503 (1966); *Consolidated Rock Prods. Co. v. Higgins*, 54 Cal.App.2d 779, 129 P.2d 929, 930 (1942); *Shapiro v. DiGuilio*, 95 Ill.App.2d 184, 237 N.E.2d 771, 774 (1968); *Barnett v. Develle*, 289 So.2d 129, 140 (La. 1974); *Catabene v. Wallner*, 16 N.J.Super. 597, 85 A.2d 300, 302 (App.Div.1951); *Strickland v. Hughes*, 273 N.C. 481, 160 S.E.2d 313, 318 (1968); *Hooffstetter v. Adams*, 67 Ohio App. 21, 35 N.E.2d 896, 901–902 (1941).

This general rule was applied to facts analogous to those in the case *sub judice* in *Catabene v. Wallner*, 16 N.J.Super. 597, 85 A.2d 300 (App.Div.1951). In that case, Catabene, a trustee in bankruptcy of Heiss & Sons, Inc., brought an action in the

Chancery Division against Wallner and other officers and stockholders of Heiss & Sons, Inc., requesting that a foreclosure sale be set aside. Catabene's complaint alleged that the corporation and its stockholders conspired to defraud the corporation's creditors by mortgaging the corporation's property to one of the corporation's officers without giving the corporation consideration in return. *Id.*, 85 A.2d at 301–302. The complaint also alleged that other defendants, in furtherance of the conspiracy, executed a foreclosure sale at which the property was sold at an amount significantly below its value. *Id.* at 302. The Chancery Division entered a judgment dismissing the complaint on the grounds that "the complaint seeks to collaterally attack a final judgment in the Chancery Division heretofore entered in the Court and therefore [this court] lacks jurisdiction to dispose of the same." *Id.* at 301.

The Appellate Division reversed the judgment dismissing the complaint. Although Catabene's complaint constituted a collateral attack on the judgment, the appellate court stated:

Even though it is a judgment of a legally organized judicial tribunal, proceeding within the scope of its allotted powers and possessing the requisite jurisdiction over the subject-matter of the suit and the parties thereto, it may be collaterally attacked when the judgment is procured through fraud of either of the parties or by the collusion of both for the purpose of defrauding a third person. Such third person may escape from the injury thus attempted by showing fraud or collusion directly affecting him by which the judgment was obtained. 1 Freeman on Judgments § 318. A judgment obtained in fraud of the interests of a third person is subject to collateral attack by him. Restatement, Judgments § 91.

*Id.* at 302. *See also* 2 Restatement (Second) of Judgments § 76 (1980). The court then stated that Catabene "is such a third person who may make a collateral attack on a judgment on the ground that it is fraudulent," because the "special rights and remedies available to creditors are also available to a trustee in bankruptcy as a primary and not a derivative right." *Id.* We find the general rule applied in *Catabene* and

followed in other jurisdictions to be persuasive and therefore adopt it.

In the case *sub judice*, appellants' complaint states in paragraph 20 that Bennett and D & L obtained final orders establishing mechanics' liens on 28 November 1990 and 15 March 1991. The foreclosure sale was held subsequent to these orders on 22 March 1991. Thus, at the time of the allegedly fraudulent and collusive sale, Bennett and D & L were creditors with vested interests in the property, *see Van Royen v. Lacey*, 262 Md. 94, 100, 277 A.2d 13 (1971), that would be abrogated if the judgment ratifying the foreclosure sale were given full credit in the present case, since the foreclosure sale resulted in a deficiency rather than a surplus out of which junior encumbrances might be satisfied.

With respect to whether appellees committed fraud or colluded to obtain the judgment ratifying the foreclosure sale, appellants' pleadings, and the inferences that we draw from those pleadings, tell the following story. Ammendale LP and NationsBank agreed that Ammendale LP would intentionally default on its loan, even though the partnership was solvent and could make the required payments. NationsBank's trustees subsequently foreclosed on the property, which was the only asset of Ammendale LP, and sold it to NationsBank's subsidiary, Metropolitan, for less than the balance outstanding on Ammendale LP's loans. Metropolitan, in turn, immediately assigned its right to purchase the property to Banbury LP, a partnership that is owned and controlled by the same British Investors who own and control Ammendale LP. NationsBank lent Banbury LP $18,675,000 to finance a portion of the $21,050,000 purchase price and $1,000,000 to finance additional improvements to the property. In return, NationsBank earns interest on the loans and could receive payments totalling $3,479,038 contingent upon the proceeds that Banbury LP derives from the property.

It could be inferred from these circumstances that appellees conspired to use the foreclosure sale to insulate the property from Bennett's and D & L's mechanics' liens, thus preventing

Bennett and D & L from receiving payment for their work in improving and enhancing the value of the property. In addition to benefiting the British Investors who own and control both Ammendale and Banbury LP, this scheme potentially could benefit NationsBank. Although NationsBank lost approximately $2,542,806 [2] when its trustees sold the property to Banbury LP, NationsBank would earn a profit of approximately $936,232,[3] even excluding the receipt of interest payments, if it were to receive the maximum amount of the contingency payments from Banbury LP. This inference is bolstered by the fact that, at the present time, the same people, the British Investors, through a new entity, possess the property, NationsBank still holds loans secured by the property, and appellants remain unpaid for their work and materials that enhanced the value of the property. Under these circumstances, the alleged "fraud is not cloaked with immunity merely because it was perpetrated by means of a legal form; it is just as vulnerable as if perpetrated by a deed or mortgage." *Catabene,* 85 A.2d at 302 (citations omitted). We believe, therefore, that the first count in the complaint adequately states a cause of action to set aside the foreclosure sale.

 We note that appellants did not allege fraud or collusion, or conduct amounting thereto, until they filed their Third Amended Complaint in February 1994, almost three years after ratification of the foreclosure sale. In their responses to the Third Amended Complaint, motions to dismiss, appellees did not assert an affirmative defense of laches or limitations. What they did assert below and argue on appeal is that, "even if [appellants' Complaint] properly alleged fraud, under well

---

2. This figure represents the difference between the amount outstanding on Ammendale LP's loan, approximately $23,592,806, and the $21,050,-000 that would be received from the foreclosure sale.

3. This figure represents the difference between the $3,479,038 maximum amount of contingency payments that NationsBank could receive and the approximately $2,542,806 that NationsBank lost when it sold the property to Banbury LP.

established Maryland case law, appellants' request came too late" and, therefore, the petition could not be granted by the circuit court because appellants failed to act "with ordinary diligence." In support of that contention, appellees cited Maryland Rule 2–535 and cases interpreting that Rule. They make the same contention, supported by the same argument, in this appeal. Maryland Rule 2–535, however, prescribes the time constraints imposed on a movant seeking a revision of a judgment in a proceeding in which the movant was a party. Because appellants were not parties to the foreclosure action that they presently are seeking to have vacated, that Rule is inapplicable in this case.

We hold that the circuit court erred in dismissing Count I of appellants' complaint. Vacating the judgment ratifying the foreclosure sale and thus nullifying the sale of the property would, of course, have the same effect as to all appellants; therefore, we need not address whether the appellants who had not acquired liens at the time of the foreclosure sale had "vested rights" in the property that would have enabled them to utilize the rule that we have adopted in this case.

## II.

■ We now turn to appellants' contention that the circuit court erred in granting appellees' motion to dismiss the counts in appellants' Third Amended Complaint that seek damages on the basis of *quantum meruit* and unjust enrichment (Counts II, III, IV, VI, and VIII).[4] These counts assert, in effect, that appellees were unjustly enriched because they

---

**4.** In their Memorandum in Opposition to NationsBank's Motion to Dismiss or for Summary Judgment and in their brief to this Court, appellants have treated their quantum meruit and unjust enrichment claims simply as unjust enrichment claims. Accordingly, we shall address both of these claims as unjust enrichment claims. Because quantum meruit and unjust enrichment are both quasi-contractual claims based on the rationale "that a defendant should not be unjustly enriched by a benefit bestowed upon him by the plaintiff," *Mass Transit Admin. v. Granite Constr. Co.,* 57 Md.App. 766, 776, 471 A.2d 1121 (1984), any differences between the theories are inconsequential to our analysis in this case.

received the value of appellants' services and materials without compensating appellants commensurately.

To state a claim of unjust enrichment, the following three elements must be established:

1. A benefit conferred upon the defendant by the plaintiff;

2. An appreciation or knowledge by the defendant of the benefit; and

3. The acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value.

*Everhart v. Miles*, 47 Md.App. 131, 136, 422 A.2d 28 (1980) (citation omitted) (footnote omitted); *Mass Transit Admin. v. Granite Constr. Co.*, 57 Md.App. 766, 774, 471 A.2d 1121 (1984). The mere fact, however, "that a person benefits another is not of itself sufficient to require the other to make restitution"; that person must be unjustly enriched. *First National Bank v. Shpritz*, 63 Md.App. 623, 640, 493 A.2d 410, *cert. denied*, 304 Md. 297, 498 A.2d 1184 (1985) (citations omitted).

> For example, "[a] person who officiously confers a benefit upon another is not entitled to restitution therefor." *Restatement, Restitution*, § 2. Similarly, ... "[a] person who without mistake, coercion or request has unconditionally conferred a benefit upon another is not entitled to restitution...." *Restatement, supra*, § 112. It is therefore clear that, while "a person is enriched if he has received a benefit," the law does not consider him *unjustly enriched* unless "the circumstances of the receipt of the benefit are such as between the two that to retain it would be unjust." *Hamilton v. Board of Education*, 233 Md. 196, 201, 195 A.2d 710 (1963) (Emphasis added in part).

*Id.* at 640–41, 493 A.2d 410.

Having determined that appellants' complaint does state a viable claim to have the foreclosure sale vacated, we shall examine appellants' unjust enrichment claims in two contexts.

We first consider whether appellants can make a claim for unjust enrichment if they are unable to establish that the foreclosure sale was tainted by fraud or collusion; then we consider whether they can make a claim if they are able to prove that the sale was tainted by fraud or collusion.

Assuming that appellants are unable to prove the existence of fraud or collusion in the foreclosure sale, their complaint cannot state a claim for unjust enrichment upon which relief may be granted against appellees. If the foreclosure sale stands, Ammendale LP no longer possesses the property and, therefore, has retained no benefit from appellants' services and materials. Likewise, NationsBank, which no longer possesses the property and lost approximately $2,542,806 when the property was sold to Banbury LP at the foreclosure sale, was never enriched by appellants' work. *See D.A. Hill Co. v. CleveTrust Realty Investors*, 524 Pa. 425, 573 A.2d 1005, 1010 (1990) (finding no benefit conferred to lending institution by subcontractor's improvements to property where value of improved property at time of foreclosure was less than amounts expended on loan by lending institution), *quoted in Francis O. Day Co. v. Montgomery County*, 102 Md.App. 514, 527, 650 A.2d 303 (1994). Finally, Banbury LP also would not be unjustly enriched. Because Banbury LP purchased the property at a foreclosure sale that was later ratified by the court, Banbury LP is presumed to have paid fair market value for the property. *McKenna v. Sachse*, 225 Md. 595, 599, 171 A.2d 732 (1961) (citations omitted) (stating that ratification of foreclosure sale establishes that price paid represents market value of the property). And if Banbury LP fully paid for whatever benefits were conferred upon the land by appellants' services and materials, it would not be unjust for Banbury LP to retain those benefits. Because neither Ammendale LP nor Banbury LP could be liable, appellees ELV/Ammendale, Carfax, and Banbury Investment could not be derivatively liable as partners of Ammendale LP or Banbury LP.

If, on the other hand, appellants are able to show that the foreclosure sale was the product of fraud or collusion, they still would be unable to recover damages for unjust enrich-

ment. Should appellants be successful in proving that the foreclosure sale was tainted by fraud or collusion, the court would vacate the sale and ownership of the property, subject to the original deeds of trust, would revert back to Ammendale LP. Ammendale LP would then have the benefits of appellants' services and materials, but the retention of those benefits by Ammendale LP would not be inequitable under the circumstances pleaded by appellants. In their unjust enrichment counts, appellants never alleged that Ammendale LP dealt with them directly or that Ammendale LP mislead them into believing that Ammendale LP, and not MHR, would be responsible for paying them. Appellants were not induced by Ammendale LP into entering into a contractual relationship with MHR and cannot now attempt to "shift the loss resulting from its error in judgment to one who may have been indirectly benefitted" by appellants' services. *Meehan v. Cheltenham Township,* 410 Pa. 446, 189 A.2d 593, 596 (1963) (holding that subcontractor who has provided services and materials to an owner cannot recover for unjust enrichment if owner did not directly contract with or mislead subcontractor). Consequently, it would not be unjust for Ammendale LP to retain the benefit of appellants' work without paying for it. *See Francis O. Day Co. v. Montgomery County,* 102 Md.App. 514, 526, 650 A.2d 303 (1994) (stating that subcontractor has no cause of action for unjust enrichment against owner of subcontractor's improvements even when contractor hired by owner fails to pay subcontractor); *A And B Boiler Co. v. Garde Corp.,* 32 Conn.Supp. 615, 349 A.2d 155, 156 (1975); *Meehan,* 189 A.2d at 596. And, as noted *supra,* if Ammendale LP is free from liability, so are its partners.

"The purpose of Maryland's Mechanics' Lien Statute . . . is to protect those who furnish labor and materials during the construction process." *Sterling Mirror of Maryland, Inc. v. Rahbar,* 90 Md.App. 193, 199, 600 A.2d 899 (1992) (citing *Riley v. Abrams,* 287 Md. 348, 412 A.2d 996 (1980)). Although the "prosecution of a mechanic's lien claim does not affect the right of the claimant to maintain an in personam action against the property owner," *NSC Contractors v. Borders,* 317

Md. 394, 398 n. 3, 564 A.2d 408 (1989), if the foreclosure sale were to be vacated, appellants' only remedy would lie in the enforcement of mechanics' liens on the property under Maryland Code (1974, 1992 Repl.Vol., 1994 Cum.Supp.), § 9–101, *et seq.*, of the Real Property Article, not in a claim for unjust enrichment. If the foreclosure sale were vacated, those appellants who had not yet perfected mechanics' liens against the property would be free to do so and to pursue the accompanying statutory remedies.

### III.

■ Appellants contend that the circuit court erred in dismissing Counts V and VII of appellants' Complaint for failing to state a claim upon which relief can be granted. Count V of appellants' Third Amended Complaint alleges that Ammendale LP and ELV/Ammendale are liable for breaching an oral contract with D & L. Count V, in relevant part, states as follows:

11. Defendant ELV/Ammendale I, Inc. ("ELV/Ammendale") is the general partner of Ammendale LP. As general partner, ELV/Ammendale is liable for the debts of Ammendale LP.

56. D & L entered into an oral contract with Windsor Development Company ("Windsor"), acting as general partner of Ammendale LP, in which D & L agreed to furnish and install site lighting (including pole lights and bases and underground conduit and wiring) for Building F for a total price of $26,414.00 ("Site Lighting Contract").

57. From August, 1988 through April, 1990, D & L performed all of the work and supplied all of the materials required by the Site Lighting Contract. D & L billed Windsor a total of $26,414.00 for that work. Windsor paid a total of $21,150.00, leaving a balance of $5,264.00 due and owing.

58. Defendant Ammendale LP's failure to pay D & L the balance due described in paragraph 47 above is a breach of the defendant's contract with plaintiff D & L for which

plaintiff D & L is entitled to recover damages of $5,264.00 against Ammendale LP and ELV/Ammendale, jointly and severally. ·

Count VII of the Complaint alleges that Ammendale and ELV/Ammendale are liable for breaching an oral contract with Judy. That count, in relevant part, states as follows:

11. Defendant ELV/Ammendale I, Inc. ("ELV/Ammendale") is the general partner of Ammendale LP. As general partner, ELV/Ammendale is liable for the debts of Ammendale LP.

66. In June, 1990, plaintiff Judy entered into oral contracts with Windsor, acting as general partner of Ammendale LP, in which Judy agreed to finish and install additional floor coverings in tenant space in Building F for a total price of $4,325.00 ("Floor Covering Contracts").

67. In June 1990, Judy performed all of the work and supplied all of the materials required by the Floor Covering Contracts. Judy billed Windsor a total of $4,325.00 for that work. Windsor has not paid Judy any of the amount for that work.

68. Defendant Ammendale LP's failure to pay Judy the balance due described in paragraph 57 above is a breach of defendant's contract with plaintiff Judy for which plaintiff Judy is entitled to recover damages of $4,325.00 against Ammendale LP and ELV/Ammendale, jointly and severally.

Initially, we note that appellees did not move to dismiss Counts V and VII as against Ammendale LP, thus the circuit court erred in dismissing those counts in their entirety. We now must determine whether, based on the pleaded facts and the inferences that we derive from them, Counts V and VII state a viable claim for breach of contract against ELV/Ammendale. *See General Fed. Constr. v. D.R. Thomas, Inc.*, 52 Md.App. 700, 705, 451 A.2d 1250 (1982).

For appellants to establish a cause of action against ELV/Ammendale for breach of contract, they must plead facts showing that Ammendale LP owed a contractual obligation to appellants and breached that obligation. *See Continental*

*Masonry Co. v. Verdel Constr. Co.*, 279 Md. 476, 480, 369 A.2d 566 (1977). Appellants then must plead facts establishing that ELV/Ammendale is liable for Ammendale LP's contractual obligations. *Id.*

Appellees do not dispute that appellants' complaint sets forth the facts required to prove the existence, and breach, of oral contracts between appellee Ammendale LP and appellants D & L and Judy that were entered into on behalf of Ammendale LP by a general partner, Windsor Development Company. *See, e.g.*, 1 Restatement (Second) of Contracts § 24 (1979). With respect to whether the complaint demonstrates that ELV/Ammendale, which is now a general partner, is liable for the contractual obligations of Ammendale LP, under Maryland partnership law, "general partners are jointly liable for the contractual debts and obligations of the partnership" even though the general partner was not a party to the agreement. *Montgomery Village Assocs. v. Mark*, 95 Md. App. 337, 342, 620 A.2d 975, *cert. denied*, 330 Md. 680 (1993) (citing *Dominion Nat'l Bank v. Sundowner Joint Venture*, 50 Md.App. 145, 160, 436 A.2d 501 (1981), *cert. denied*, 292 Md. 597 (1982)); *see also* Md.Code (1974, 1993 Repl.Vol.), § 9–307(a)(2) of the Corporations and Associations Article. Thus, as a general partner of Ammendale LP, ELV/Ammendale is jointly liable for the contractual debts that Ammendale LP owes to D & L and Judy.

Appellees asserted in their motion to dismiss that, because appellants did not "allege that [ELV/Ammendale] was general [sic] partner of [Ammendale LP] at the time the alleged contracts were entered into," they failed to state a claim that ELV/Ammendale was derivatively liable for Ammendale LP's contractual obligations. Such an allegation is unnecessary to establish ELV/Ammendale's liability. ELV/Ammendale "is liable for all the obligations of the partnership arising before [its] admission as though [it] had been a partner when the obligations were incurred. . . ." Md.Code (1974, 1989 Repl. Vol., 1994 Cum.Supp.), § 5–351(b) of the Courts and Judicial Proceedings Article.

▰▰▰ Appellees also argued in their motion to dismiss that ELV/Ammendale cannot be held derivatively liable because the partnership has no assets from which to satisfy appellants' claims. This argument is equally inapposite because the ability of ELV/Ammendale to satisfy a claim against it is irrelevant in determining whether appellants' complaint sets forth facts establishing a *prima facie* claim for breach of contract. Accordingly, we hold that the circuit court erred in dismissing Counts V and VII of appellants' complaint.

**JUDGMENT REVERSED AS TO COUNTS I, V, AND VII OF APPELLANTS' THIRD AMENDED COMPLAINT.**

**JUDGMENT AFFIRMED AS TO COUNTS II, III, IV, VI, AND VIII OF APPELLANTS' THIRD AMENDED COMPLAINT.**

**COSTS TO BE PAID ONE–HALF BY APPELLANTS AND ONE–HALF BY APPELLEES.**